SIOUX CITY & D. M. RY. Co. *v.* CHICAGO, M. & ST. P. RY. Co. and others.

*(Circuit Court, N. D. Iowa, W. D.* May Term, 1886.)

1. REMOVAL OF CAUSE—CITIZENSHIP OF NOMINAL PARTY.
    The question of the citizenship of nominal parties, joined as defendants with the real defendants in an action, is not to be considered, as against the jurisdiction of a federal court, after removal from a court of one of the states.

2. SAME—WHO ARE NOMINAL PARTIES.
    When the allegations of the bill filed in a cause do not show that a sheriff and other officials named therein as joint defendants had any real joint interest in the subject in controversy, they are to be deemed mere nominal parties.

3. RAILROAD COMPANIES—RIGHT TO EXCLUSIVE USE OF LAND.

    One railroad cannot. by purchasing land, and proceeding to lay its track thereon. debar from the same land another company which had previously surveyed and staked out there a branch line of its own.

In Equity.    Motion to dissolve injunction.

*Joy, Wright & Hudson,* for complainant.

*R. J. Chase, O. J. Taylor,* and *J. W. Cary,* for defendants.

SHIRAS, J.    The bill in this cause was originally filed in the district court of Woodbury county, Iowa, a writ of injunction being allowed, upon the filing of the bill, restraining the defendants from proceeding with the condemnation of the right of way over certain realty in the bill described.    The Chicago, Milwaukee & St. Paul Railway Company filed its answer to the bill, and a petition for the removal of the cause into the federal court, accompanied with a proper bond.    The state court refusing to grant an order of removal, the petitioner procured a transcript, and filed the same in this court, and thereupon filed a motion to dissolve the writ of injunction, on the ground that the answer fully met and denied all the grounds relied upon in the bill as reasons for enjoining the condemnation proceedings.    At the time set for the hearing of this motion the complainant filed objections to the jurisdiction of the court, and it therefore becomes necessary to determine whether the case is one that is removable to this court.

The record shows that the complainant is a corporation organized under the laws of Iowa; that the defendant, the Chicago, Milwaukee & St. Paul Railway Company, is a corporation organized under the laws of the state of Wisconsin, and the other defendants are the sheriff of Woodbury county, and the commissioners by him summoned to appraise the damages to be paid by the Chicago, Milwaukee & St. Paul Company for its right of way over the premises in the bill described, and that these individual defendants are citizens of Iowa.    The allegations of complainant's bill show that the subject of controversy is the question of which company has the right to occupy the premises in question for the construction of its line of railway.    In this question the sheriff and the commissioners have no personal interest.    They stand wholly indifferent between the parties.    No action by them in the cause can affect the rights of the railway companies.    They are purely nominal parties, and their joinder cannot affect the question of jurisdiction and the right of removal.    There is but one controversy in the cause, and that is, which company has the prior, and therefore better, right to the occupancy of the premises in dispute, for the purposes of constructing and operating its line of railway?    The sole parties in interest in this controversy are the railway companies, and the other defendants having no interest therein, and no right of control over the litigation intended to settle this question, it must be held that these parties

are nominal only, and their presence as parties can neither confer nor defeat jurisdiction in this court.

Thus, in *Wood* v. *Davis*, 18 How. 467, it is said:

"It has been repeatedly decided by this court that formal parties, or nominal parties, or parties without interest, united with the real parties to the litigation, cannot oust the federal courts of jurisdiction, if the citizenship or character of the real parties be such as to confer it."

See, also, *Browne* v. *Strode*, 5 Cranch, 303; *Wormley* v. *Wormley*, 8 Wheat. 421; *Township of Aroma* v. *Auditor*, 9 Biss. 289; S. C. 2 Fed. Rep. 33; *Foss* v. *First Nat. Bank*, 1 McCrary, 474; S. C. 3 Fed. Rep. 185.

The allegations of the bill filed in this cause do not show that the sheriff and commissioners have any joint interest in the subject of the controversy with the Chicago, Milwaukee & St. Paul Railway Company; but, on the contrary, it appears from the bill that the only connection they have with the matter in dispute is in discharge of the duty imposed upon them by law, and that does not confer upon them any interest in the controversy; and hence it must be held that they are nominal parties only, and the jurisdiction of this court depends upon the citizenship of the real parties to the controversy, to-wit, the railway companies. As to these the bill, as well as the petition for removal, shows that they are corporations organized under the laws of different states, to-wit, Iowa and Wisconsin; and consequently the right of removal existed, and the filing of the petition and bond in the state court terminated the jurisdiction of that court.

2. The question presented by the motion to dissolve the preliminary injunction is one of importance, and it is with extreme reluctance that I consider it upon a motion to dissolve. The bill avers that the complainant is a corporation, and has been such for nearly a year past, created for the purpose of building a railway from Sioux City to Des Moines, the construction of which has been commenced; that the Chicago, Milwaukee & St. Paul Railway Company is a corporation created under the laws of the state of Wisconsin, is operating a line of railway in Iowa, and desires to condemn the right of way over the premises in the bill described for the purpose of constructing a line of railway from Sioux City to Defiance, in the state of Iowa; that, upon the request of said defendant company, the sheriff of Woodbury county, on the nineteenth day of April, 1886, appointed commissioners to assess the damages to certain lands by reason of the alleged location of said defendant's line of railway over the same; that the said complainant, in the month of October, 1885, located its line of road, and surveyed the same, over the lands in the bill described, for the purpose and with the intent to construct its line over the same, and has commenced the construction of its line over a part of said lands, with the purpose of pushing the construction thereof as speedily as possible; that, previous to the time of the appointment of said commissioners by the sheriff for the ap-

praisal of damages, the complainant had purchased from the owners of the realty, for its right of way over and across the same, certain tracts of land, fully described in the bill; that the complainant procured its right of way over said lands, for the public purpose of constructing its line of railway, before the defendant company acquired any right therein, or any right to condemn said premises for its right of way; that the strips of land in the bill described are necessary for the construction of complainant's road, and were purchased in good faith, for that sole use and purpose; that when it became evident that the complainant was about to build its line of road, and had commenced the same, the defendant company petitioned the sheriff of the county for the appointment of commissioners to appraise the damages for such right of way over said lands on behalf of defendant; that, unless restrained, the commissioners will appraise the damages, thereby condemning the land for the use of defendant; and an injunction is prayed restraining the defendant company, the sheriff, and the commissioners from proceeding with such condemnation. Before filing this bill, as already stated, a preliminary writ of injunction was obtained from the district court of Woodbury county, without notice to the defendant company.

The Chicago, Milwaukee & St. Paul Railway Company, in its answer to said bill, avers that for several years past the defendant company has had in contemplation the construction of a line of railway from Sioux City to Defiance, thus connecting its system of railway in Dakota with its through line from Council Bluffs to Chicago; that, in pursuance of such plan, in the summer of 1881 it caused surveys to be made for such line, and in the fall of 1881 it located the same; that in the year 1883 it procured, by ordinance duly passed, the right to lay a double track along Second street, in said Sioux City, to the eastern limits of the city, and did, during that year, construct its track easterly along said street, to within a few feet of the eastern corporate limits of said city, the same being done as the commencement of its said line to Defiance; that in October, 1884, it purchased 15 lots in Felt's addition to Sioux City, lying next east of the city limits, in direct line with the location of defendant's road, and did also purchase of said Felt a piece of land contiguous to and bounded by said lots, and extending to the middle of the Floyd river, the same being purchased so as to secure the right of way for the construction of said line to Defiance; that in June, 1885, it retraced its located line, and permanently located the same between Sioux City and Defiance, the same being marked with stakes driven in the center of the line, at a distance of 100 feet, and that defendant's line over all the premises in the bill described was permanently located in June, 1885; that, having decided to immediately construct said Defiance line, it did, on the morning of the fifteenth day of April, 1886, commence to negotiate and contract for the right of way along said line, obtaining by purchase such right of way over certain premises set

forth in the answer; admits that on the nineteenth of April, 1886, at its request, commissioners for the appraisal of damages were appointed; and further avers that complainant well knew that defendant was intending to construct its located line from Sioux City to Defiance, and had commenced procuring the right of way, and that, in fraud of the rights of defendant, and in some cases by misrepresentations, complainant procured conveyances of the premises and right of way in the bill described, but that the same were not procured until after the defendant company had initiated proceedings in condemnation.

The admitted fact is that both complainant and defendant are engaged in building lines of railway south-easterly from Sioux City, and, owing to the character of the country, the opportunities of getting feasible routes are limited, and both companies are anxious to secure the line over the premises in the bill described. The question presented is whether complainant is entitled to continue in force the writ of injunction which forbids the defendant from having the damages assessed for its right of way. This really involves the point whether it appears from the allegations of the bill and answer that complainant has the better right to the occupancy of the premises in dispute. On part of complainant, it is argued that the conveyances to it give it the absolute title to the right of way, because, when they were executed, the defendant company had not paid the damages to the owners of the land; that payment is necessary, under the statutes of Iowa, to create a right in the railway company as against the owner of the land; and that until payment is made the owner's control over his property is absolute, and he can convey the same, or a right of way over the same, to any railway company. On part of defendant it is claimed that the permanent location of a line of railway by survey and marking upon the ground must be deemed to be the beginning of the building of the road; and that the right thus acquired will not be lost, provided the construction of the road is resumed within five years, that being the limitation fixed by section 1260 of the Code of Iowa.

That the survey and location of a railway is part of the work of constructing the same, is held in *Chicago, R. I. & P. R. Co.* v. *Grinnell*, 51 Iowa, 476–482; S. C. 1 N. W. Rep. 712.

It is certainly equitable that a company, which in good faith surveys and locates a line of railway, and pays the expense thereof, should have a prior claim for the right of way for at least a reasonable length of time. The company does not perfect its right to the use of the land, as against the owner thereof, until it has paid the damages, but, as against a railroad company, it may have a prior right, and better equity. The right to the use of the right of way is a public, not a private, right. It is, in fact, a grant from the state, and although the payment of the damages to the owner is a necessary prerequisite, the state may define who shall have the prior right

to pay the damages to the owner, and thereby acquire a perfected right to the easement. The owner cannot, by conveying the right of way to A., thereby prevent the state from granting the right to B. All that the owner can demand is that his damages shall be paid, and, subject to the right of compensation to the owner, the state has the control over the right of way, and can, by statute, prescribe when, and by what acts, the right thereto shall vest, and also what shall constitute an abandonment of such right.

Section 1241 of the Code of Iowa provides that any railway company make take and hold "so much real estate as may be necessary for the *location, construction*, and *convenient* use of its railway," etc.; and section 1244 enacts that, where the parties cannot agree upon the compensation to be paid, the sheriff of the county shall, upon application of either party, appoint six disinterested freeholders, who shall assess the damages; and by section 1245 it is provided that the application to the sheriff shall be in writing, and the freeholders appointed shall assess all damages to realty in the county, five days' notice being given to the party in interest. Section 1253 provides that the report of the commissioners, with the amount of damages, may be recorded in the record of deeds; "and such record shall be presumptive evidence of title in the corporation to the property so taken, and shall constitute constructive notice of the rights of such corporation therein." This recording, however, cannot be made until the commissioners have filed their report. From the time the application is made to the sheriff for the appointment of commissioners, and while they are engaged in the performance of their duty, it must be certainly true that the company seeking the condemnation of the land has a right which cannot be defeated by the action of the property owner in conveying a right of way to a rival company. Whether such right may not, at least in some cases, antedate the time of the application to the sheriff, is open to question.

In *Morris & E. R. Co.* v. *Blair*, 9 N. J. Eq. 635, it was held that, under the Statutes of New Jersey, the prior right belonged to the corporation which first actually surveyed and adopted a route, and filed its survey with the secretary of state.

In *Titusville & P. C. R. Co.* v. *Warren & V. R. Co.*, 12 Phila. 642, it was held "that, when a railroad company has ascertained and located where its road shall be, it is not competent for another company to step in and take its route, agree with the owners, and occupy the land." The injustice and injury to private and public rights alike, which would arise, were it held that, after a company has duly surveyed and located its line of railway, and is in good faith preparing to carry forward the construction of its road, some other company may, by private purchase, procure the right of way over parts of the located line, and either prevent the construction of the road, or extort a heavy and exorbitant payment from the company first locating its line as a condition to the right to build the

same as originally located, are strong reasons for holding that the first location, if made in good faith, and followed up within a reasonable time, may confer the prior right, even though a rival company may have secured the conveyance of the right of way by purchase from the property owners after the location, but before the application to the sheriff for the appointment of commissioners. Mills, Em. Dom. § 47; 1 Redf. Rys. § 15; Pierce, Rys. 257. As to the effect given to a location of a route under certain acts of congress, see *Railway Co.* v. *Alling*, 99 U. S. 463; *Ex parte Railway Co.*, 101 U. S. 711.

By the averments in the answer filed in this cause, it is made to appear that the line of the defendant's road through Woodbury county was finally and permanently located in June, 1885, and it was so done and marked that the complainant must have known the exact location of such line. On the sixteenth day of April, 1886, the defendant company procured the transfer of the right of way over a small part of the line, and on the nineteenth of April procured the appointment of commissioners to appraise the damages on the entire line in Woodbury county. On the nineteenth and twentieth days of April, 1886, the complainant received the conveyances of title to part, and of the right of way over the remainder, of the premises in dispute. Part of these conveyances do not define a special line, but grant a right of way over a specific tract of land, leaving it to be determined in the future where the right of way shall be located. Under the allegations of the bill and answer it is not made to appear that the complainant company had the prior right over these premises, but, on the contrary, it appears that when complainant procured the same it well knew that the defendant company had located its line of road over the same, and was procuring by purchase and condemnation the right of way, and was proceeding in the construction of the road. Consequently the conveyances to the complainant must be held to have been taken subject to the prior right of the defendant company.

On the seventeenth of August, 1885, G. R. Camp and wife conveyed, by warranty deed, the fee title to eighty-eight one-hundredths acres, in section 35, and it is now claimed by complainant that, being the owner of this land, it has the right to locate its track thereon, to the exclusion of the defendant. When this purchase was made the line of the defendant company was permanently located and marked upon this tract, and the mere fact that the complainant bought the land does not, of itself, defeat the right of the defendant to construct its road over the same. The right of eminent domain in the state extends to lands owned by railway companies as well as to those owned by individuals.

The question is whether the complainant, as the owner of the land, has the right to prevent the defendant company from constructing its road over the line permanently located in June, 1885. If it be true

that complainant, by making the purchase of the realty over which the defendant's line is located, has the right to prevent the completion of the road, then it would be in the power of any company to prevent the construction of competing lines by simply purchasing portions of the realty over which the line is located and placing thereon its own track. From the allegations of the bill and answer, it is clear that the defendant company located its line through Woodbury county, and over the premises in the bill described, before the complainant had secured any right of way, or had in any way located its line. There is no fact shown which would justify the court in holding that the defendant had abandoned this location, or the rights thereby conferred. On the contrary, the averments of the answer, which are not controverted, show that the defendant is proceeding with the construction of its located line, and that, when complainant procured the conveyances on which it relies, it knew of the location of defendant's line, and that the final construction thereof was being proceeded with.

If the injunction heretofore granted should be continued in force, it would prevent the defendant from constructing a bridge over the Floyd river at the place selected therefor, and would compel other serious and injurious changes in the located line. To justify such action, the right of complainant, and the need therefor, must be made clear. Under the showing made by the bill and answer the prior right seems to be with defendant, and, under such circumstances, it cannot be expected that the court will, by injunction, prevent the company from proceeding with the condemnation of the premises, and the construction of its road. It is to the public interest that the construction of both lines should be assured. While each company is entitled to proper protection in its rights, still neither company should be permitted to interfere unnecessarily with the construction of the other line. The prior location made by the defendant company, in connection with the work and outlay incurred in beginning the actual construction of the line, gives it the prior right to the use of so much of the right of way as may be necessary to enable it to construct its road over the selected line, but it does not follow that every other company is to be debarred from using a portion of the general right of way, if the use thereof is essential to the building of the competing line. Cases may arise which would justify equitable interference in the interests of the public, if it should appear that one company was seeking to defeat the construction of another line by excluding it from using premises not essential to the former. Priority of right does not necessarily mean the right to wholly exclude other companies from the use of a part of the 100 feet, if such use is necessary to insure the building of the other line.

As the facts are now made to appear from the bill and answer, the priority of right is with the defendant company, and the injunction heretofore granted must therefore be dissolved; and it is so ordered.