# CHARLESTON.

Kanawha, Glen Jean & Eastern R. R. Co. v. Glen Jean,
Lower Loup & Deep Water R. R. Co.

(Brannon, President, *dissenting*.)

Submitted January 26, 1898—Decided April 22, 1898.

1. Injunction—*Railroads—Right of Way—Title.*

    A railroad company claiming adverse right and title to a right of way lawfully in the possession of a rival company by virtue of condemnatory proceedings, cannot enjoin the latter company from proceeding to construct its road until just compensation is paid to the former company. But the disputed right and title must first be settled at law.  (p. 125).

2. Railroads—*Right of Way—Priority of Location—Title—Eminent Domain.*

    As between rival railroad companies, priority of location gives priority of title, which is perfected by after-condemnation. The title thus acquired is derived from the State by virtue of its right of eminent domain, and entirely supersedes and annuls the title of the landowner on payment of just compensation to him, and reinvests the same in the applicant therefor.  (p. 125).

3. Eminent Domain—*Title—Railroads—Collateral Attack.*

    Where the right of eminent domain has been exercised in behalf of a railroad company, and the land has been condemned, damages assessed and paid, and the company placed in possession of such land, the title thereby acquired, in so far as it is without reservation, becomes adverse to all other claimants of the property so condemned. Nor can such proceedings be collaterally attacked, except for fraud.  (p. 125).

Appeal from Circuit Court, Fayette County.

Bill by the Kanawha, Glen Jean & Eastern Railroad Company against the Glen Jean, Lower Loup & Deep

Water Railroad Company for an injunction and equitable relief. From a judgment for plaintiff, defendant appeals.

*Reversed.*

J. W. DAVIS and A. D. PRESTON, for appellant.

BROWN, JACKSON & KNIGHT and J. D. McKELL, for appellee.

DENT, JUDGE:

On the 31st day of October, 1895, the Glen Jean, Lower Loup & Deep Water Railroad Company, in accordance with its charter, began to locate the line of its road through the lands of Thomas G. McKell, in the county of Fayette, and continued the same until completed on the 2d day of November. On the 1st day of November, 1895, a certificate of incorporation was issued to the Kanawha, Glen Jean & Eastern Railroad Company, the incorporators being Thomas G. McKell, two hundred and forty-six shares, M. Jackson, one share, R. G. Quarrier, one share, J. F. Brown, one share, and E. W. Knight, one share; making two hundred and fifty shares. The incorporators forthwith held a meeting, and directed subscription books to be opened under the supervision of E. W. Knight and M. Jackson at the office of Brown, Jackson & Knight, in the city of Charleston, the subscription to be reported to a meeting of the stockholders to be called by them when the subscription should exceed one-twentieth of the capital stock of the company. On the next day the committee reported that T. G. McKell had subscribed ten more shares of stock, and the corporators immediately proceeded to elect themselves a board of directors, without publishing the notices for four successive weeks, as required in section 36, chapter 54, Code. The board of directors passed some by-laws, and proceeded to organize by electing T. G. McKell president, J. W. Brown vice president, E. W. Knight secretary, and S. M. Veall, who was neither a director nor stockholder, treasurer. It then being represented that the line of the road would pass through the lands of Thomas G. McKell, Mr. McKell, who was the president and the whole of the corporation except four shares owned by his attorneys, retired from the meeting,

which at once appointed E. W. Knight to negotiate with
Mr. McKell for the right of way through his lands.   This
was accomplished, and the meeting reassembled, and the
right of way was accepted at twelve thousand three hun-
dred dollars, and other land was bargained for at three
hundred dollars per acre, according to the necessities of
the company.   Mr. McKell signed the deed, and it was
immediately forwarded to Fayette County for recordation.
There was no public notice of any of these meetings, but
they were all held, charter obtained, land purchased and
conveyance record ed in the space of two days.   On the 5th
of November, 1895, the Glen Jean, Lower Loup & Deep
Water Railroad Company served notice on Thomas G.
McKell that it was about to institute proceedings in the
circuit court of Fayette County for the condemnation of
his land for the use of its road as located and platted.   Thom-
as G. McKell appeared, and on his petition the proceed-
ings of condemnation were removed into the circuit court
of the United States at Charleston.   Mr. McKell therein ap-
peared, and filed a disclaimer as to part of the land
proposed to be taken, and alleged the title was in the Kana-
wha, Glen Jean & Eastern Railr oad Company by virtue of
his deed made as aforesaid.   The proceedings were there-
upon stayed until the notice re quired by statute should be
given the said Kanawha, Glen Jea n & Eastern Railroad
Company.   What further action was taken by the court
on this disclaimer does not appear, as only excerpts from
the record are presented on either side in this case.   Ar-
guments of counsel and oral testimony are not proper in
support of so important a question, as the record itself is
the only sufficient proof thereof. It is plain, however, from
the final order filed that the court did dispose of such dis-
claimer in some manner favorable to the defendant, for the
land is condemned and given to it.   It cannot be presumed
that the court disregarded the statute, and declined to
summon a party shown to be interested in the land pro-
posed to be taken, but it must have either summoned the
plaintiff, or decided the defendant's right was the prior
and better right to the land.   It is not a sufficient answer
to this to say that only McKell's title was condemned, but
it is the reserved title of the State, which is paramount

thereto, and used to oust McKell's title; the proceeding, so far as taking the land is concerned, being in the nature of a proceeding *in rem* while the assessment of damages is is a proceeding *in personam.* The right of the defendant to take the land for public use cannot be controverted. So the only question at issue and only reason why the plaintiff was, in any event, a necessary party to the condemnation proceedings, was that it might receive its proportionate share of the damages assessed. That the court condemned the land, and not the mere title of Mc-Kell, is shown by the latter part of its order, to wit: "The quantity of land to be taken along said outer line is as follows: From station 340 plus 9 of the Loup Creek Branch of the Chesapeake & Ohio Railroad, which station is the O station of the Glen Jean, Lower Loup and Deep Water R. R., as the same is located and marked by a stake, to station 40 plus 75 on said center line of the said Glen Jean, Lower Loup & Deep Water R. R., which station is on the line between the lands of Thomas G. McKell and the lands of N. M. Jenkin, and 4,075 feet from the beginning, 50 feet on each side of said center line, except so much as lies without the track and right of way of the Loup Creek Branch of the Chesapeake & Ohio Railroad, and containing in all nine and thirty-seven one hundredths acres (9 37-100) by survey, be, and the same is hereby, vested in fee simple in the applicant, The Glen Jean & Deep Water Railroad Company. * * * And the petitioner is entitled to a writ of possession against the defendant to put it in possession of the land condemned, and such writ is hereby awarded upon the payment of the costs aforesaid." The plaintiff alleges two grounds for injunction:

1. That the land proposed to be taken is indispensible to it for its purposes, and that it could not be adequately compensated for the loss of the same by the recovery of damages. This appears to be abandoned in the proof and argument, as the statute authorizes the condemnation and taking of just such property by rival railway companies, and any work or grading by the plaintiff was undertaken and done after it had full actual notice of defendant's condemnation proceedings, as its officers, directors, and

stockholders were either attorneys therein or a party thereto, and was, therefore, done in violation of defendant's rights acquired by survey and location of its road.

2. That it had not been secured or paid a just compensation for the land taken. It is plain from its order that the circuit court assessed full damages for the whole of the land, and made no reservation of plaintiff's claim in regard thereto. If it did not require plaintiff notified of the proceedings according to section 8, chapter 42, Code, it may have been because it thought it was the duty of the plaintiff to intervene by petition or other appropriate procedure if it desired to share in the damages, for the reason that it obtained its deed, and placed it on record, after the appropriation proceedings were commenced by survey and location of the route. 3 Elliott, R. R. p., 1450, § 1001. Or it may have been because it considered plaintiff's deed made with intent to delay and hinder defendant in the acquirement of that which it was lawfully entitled to, and therefore void under section 1, chapter 74, Code, which reads: "Every gift, conveyance, assignment or transfer of, or charge upon any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing given, with intent to delay, hinder or defraud creditors, purchasers or other persons, of or from what they are or may be lawfully entitled to, shall as to such creditors, purchasers or other persons, their representatives or assigns, be void." The circumstances surrounding the incorporation, the organization, and the execution of the deed certainly tend to raise a presumption of an intent to delay and hinder the defendant in lawfully acquiring title to the land. Such has been, and, if permitted to stand in the way, such will be, the effect of the deed; and hence its good faith is an open question for determination on a proper case. Every description of contract, and every transfer or conveyance of property, by what means soever it is done is vitiated by such intent. "Whether the contract is oral or in writing, whether executed by the parties with all the solemnities of deeds by seal and acknowledgment, whether in the form of a judgment of a court stamped with a judicial sanction, or carried out by the device of a corporation organized

with all the forms and requirements demanded by any statute, if it is contaminated with fraud, the law decrees it to be a nullity. Deeds, obligations, contracts, judgments, and even corporate bodies may be the instruments through which parties may obtain the most unrighteous advantages." All such devices are nullities and the law disregards them as though they had never been executed. Bump. Fraud. Conv. p. 267, § 228. For a landowner, after he acquires the knowledge that a railroad corporation is about to proceed to appropriate a portion of his land for its uses under the right of eminent domain, to start a rival corporation, and deed to it such land for the purpose of hindering, delaying, and defeating by excessive damages such appropriation, is undoubtedly within the spirit and letter of the statute. If such things were permitted, a landowner, his wife, and three children, without the assistance of others, might become a railroad corporation for damages only. Or it might be that the court, being aware of the fact that Thomas G. McKell owned exceeding ninety eight per cent. of the stock, and his attorneys owned less than two per cent., decided that the Kanawha, Glen Jean & Eastern Railroad Company was but another name for Thomas G. McKell, and that when he stood outside, and waited for the less than two per cent. of the stock to resolve to purchase the land of the exceeding ninety-eight per cent., and then made a deed in accordance therewith, he was but making a deed from McKell to McKell, and, having the real person in interest before the court in his proper name, it was not necessary to notify him also to be present in his corporate name, and that, in whatever way it might regard him, he was still the true equitable owner of the land in controversy. Such a court of equity, looking through all forms and devices, would determine. These are mere conjectures, and are only given to illustrate the status of the present litigation, and not as intimations that McKell was guilty of fraudulent intent beyond what may be justly inferred from the facts; such determination not being necessary to the decision of this case. A person having indisputable right to land, although there may arise quibbles in regard thereto, may enjoin a railroad company from taking the same until his

compensation therefor has been paid or secured. But where a railroad company has condemned land for its location, paid the damages assessed, and been put in possession thereof by the court, a rival railroad company, claiming a prior right thereto adversely, cannot enjoin the railroad so in possession, until it has established the superior right at law. In the case of *Railroad Co. v. Blair*, 9 N. J. Eq., 635, it is held that it is "not in accordance with the practice of a court of equity upon a mere injunction bill to investigate and decide the legal title of two railroad companies under their respective charters to a conflicting route." *Erie Ry. Co.* v. *Delaware, L. & W. R. Co.*, 21 N. J. Eq., 283; *Canal Co.* v. *Young*, 3 Md., 480. And in the case of *Williamsport & N. B. R. Co.* v. *Philadelphia & E. R. Co.*, 141 Pa. St., 408, (21 Atl., 646), it was held: "In the absence of the location of its right of way by corporate action, a railroad company has no standing to ask for an injunction restraining another company from proceeding regularly to appropriate land for a roadway, even though the land in question may be owned by the plaintiff company." Also: "As to third persons and rival corporations, the action of the company adopting a definite location is enough to give title." In 3 Elliott, R. R. § 927, the law is stated to be: "When a proposed line has been regularly located and staked off, and the expense thereof has been paid, the corporation by which it is done has a prior claim to the right of way for a reasonable time which cannot be defeated by another company that procures voluntary conveyances from the owners before the proceedings in condemnation instituted by the first company have been terminated." *Pittsburg V. & C. Ry. Co.* v *Pittsburg, C. & S. L. R. Co.*, 159 Pa. St., 331, (28 Atl., 155); *Sioux City & D. M. R. Co.* v. *Chicago, M. & St. P. R. Co.*, 27 Fed., 770. Between rival railroad companies the question of priority of location is a legal question, to be determined from the evidence and circumstances of the case. It is one of fact to be inquired into by a jury. The plaintiff claims the land by deed from the landowner; the defendant from the State by virtue of condemnation proceedings, and is in lawful possession under the order of the condemnatory court. The presumption of right is with the de-

fendant. Under such circumstances the plaintiff is not entitled to an injunction until it has established the supremacy of its claim at law. The defendant, being in possession, might have answered setting forth the superiority of its right, and attacked the plaintiff's deed as a cloud on its title, but it preferred to rely upon its legal rights. To do so is its privilege. This conclusion renders unnecessary further consideration of the other questions raised. The decree complained of is reversed, the injunction dissolved, and the bill dismissed.

BRANNON, PRESIDENT, (*dissenting*):

This is a contest between two competing railroads for ground for right of way. The Glen Jean, Lower Loup & Deep Water Railroad Company made a survey for the location of its line, beginning 29th of October and ending 2d of November, 1895, upon land of McKell. On November 2d, McKell conveyed to the Kanawha, Glen Jean & Eastern Railroad Company a strip of land for its right of way. On November 5th the Glen Jean, Lower Loup & Deep Water Company served on McKell a notice of an application by it in the circuit court of Fayette County to condemn the land which it had surveyed for its road, including parts of that so conveyed by McKell to the Kanawha, Glen Jean & Eastern Railroad Company, and on that day filed its application to condemn. McKell was a party to that proceeding, but the Kanawha, Glen Jean & Eastern Railroad Company was not. This proceeding resulted in a judgment condemning for the use of the Glen Jean, Lower Loup & Deep Water Railroad Company "the title of the defendant Thomas G. McKell to the real estate described in the application." Later the Kanawha, Glen Jean & Eastern Railroad Company brought an injunction suit against the Glen Jean, Lower Loup & Deep Water Railroad Company, stopping it from building its railroad over the land conveyed to the former company by McKell, and, the injunction having been perpetuated, the defendant company brings the case here by appeal.

Several questions arise in this case. One question is, did the mere location of its line by the Glen Jean, Lower

Loup & Deep Water Company give it priority over the Kanawha, Glen Jean & Eastern Company to the ground in dispute? Was the right of said locating company so far perfected as to vest in it an inchoate title, so that the conveyance from McKell to the Kanawha, Glen Jean & Eastern Company would be held void because it would be a subsequent purchase of the land? It is claimed that the mere survey created what I may call a "clamp" upon that land,—a right to it in preference to all other railroad companies, forbidding the owner of the land to sell it, or any other company to buy it from him. I am clear in the opinion that, after the proceeding for condemnation begins, any one purchasing the land acquires a void title because he is a *pendente lite* purchaser, and the statute requiring recordation of *lis pendens* does not apply; but, unless we hold that the mere survey is the commencement of the proceeding for condemnation, the deed from McKell to the Kanawha, Glen Jean & Eastern Company cannot be affected on the theory that said company is a *pendente lite* purchaser. But I think that such survey is no part of the process of condemenation, and that that process has its commencement with the service of notice of the filing of the application. I do not think that our statute law can be so construed as to date commencement of the condemnation procedure earlier than the service of notice. Code, c. 54, section 50, does, it is true, provide that a railroad company may "cause such examination and survey for its proposed railroad to be made as may be necessary to the selection of the most advantageous route, and for such purpose, by its officers, agents, engineers, or employes, may enter upon lands or waters of any persons or corporation;" but the very language indicates that this is a preliminary proceeding anterior to the actual selection, by the corporate authorites of the company, of the route of the railroad, and is not itself a fixed selection or location, and cannot be a part of the legal proceeding, and, moreover, cannot even be a location. It requires something further in this State, whatever may be the law in other states, as the question depends largely on statute law variant in the different states; and in reading the law books we must keep our eyes upon these various statutes under which the de-

cisions were rendered. It is clear to me that after such survey there must be action by the board of directors of the company adopting the location to constitute it an appropriation of the land, so as to give title to one railroad company as against another. An engineer alone cannot make a location. This has been held by the Supreme Court of Pennsylvania in *Williamsport & N. B. R. Co.* v. *Philadelphia & E. R. Co.*, 141 Pa. St., 407, (21 Atl., 645). The late and invaluable work on Railroads by Elliott (volume 3, § 927) states the rule properly, thus: "The location of the road results only from some definite action on the part of the corporation itself. An engineer alone cannot locate a railroad so as to give title to the company that employs him; and a preliminary survey, made by an engineer, which has never been reported to or adopted by the company, does not constitute a legal location of the line of the railroad which will give such company priority over another company that has adopted a line covering a portion of the same territory." Lewis, Em. Dom. § 306, says that to give priority to one company over the other there must be a complete location. Pierce, R. R., 157, says "the prior right attaches to the company which first actually surveys and adopts the route and files its survey according to law." 2 Wood, R. R. § 269, says that: "To constitute such location there must be some definite corporate action on the part of the company establishing and adopting some definite route. The mere fact that an engineer alone surveyed and marked out a line is not sufficient to amount to a valid appropriation of the location by the company, and it cannot afford ground for proceedings against a rival company occupying that line." So holds *Barre R. Co.* v. *Montpelier & W. R. Co.*, 61 Vt., 1, (17 Atl., 923).

Now, the rights of the Glen Jean, Lower Loup & Deep Water Railroad Company cannot meet the demands of this law, as it does not appear that its survey was returned to the company or adopted by it, prior to McKell's deed to the other company. Indeed, I may say it was not because the actual ground survey was not completed until 2d of November, and the plat was not likely returned until later, as I find an exhibit made by its engineer, giving the description of the land, dated 4th November. McKell's deed

to the other company was 2d November. Thus, when that deed was made, the defendant company had no right in the land to prevent the owner from selling it, or to prevent the other company from buying it. Code 1891, c. 54, section 65, provides that a railroad corporation shall, within a reasonable time after its railroad is located, cause a map and profile, showing the owners of the lands through which it runs, to be filed in the office of the secretary of state and the office of the clerk of the county court in each county through which it runs. What effect as an appropriation of land such plat, when filed, would have, I need not say, as there is no appearance that that section was complied with by the Glen Jean, Lower Loup & Deep Water Company. That plat could not be filed until the location should be adopted by the directors of the company. Thus no right could vest in a locating company at earliest until its directors adopted a location. My own opinion is that there is no appropriation preventing another company from acquiring the right of way until the actual commencement of the proceeding for condemnation. We ought to have a fixed rule in this matter. Any rule is better than none. If we say that a mere survey by an engineer, or even one adopted by the directors, constitutes an appropriation as against other companies, it opens the door to uncertainty. Take our State. It has been checkered by surveys without number, so that, if they are living, it would be an Egyptian labyrinth of confusion. I know that the law does not keep alive these locations anywhere indefinitely, but how long do they last? No statute fixes their duration, and excuses of all sorts, and based on variable oral evidence will be set up, or might be, to prolong their lives, and thus the door of uncertainty would be open, and these surveys might come to be a Pandora's box of evil; but, if we adopt the rule that only the commencement of a condemnation proceeding can give right, we have a rule of safety and certainty.. I surely would not commence it before the filing of a plat in the clerk's office under said statute. In this connection it is pertinent to remember, as bearing on this question, that the owner of land has as an inherent part of his estate the *jus disponendi* (the right of disposal) and when you take

away that for even a very short period, you detract from the efficacy of his estate in the land. You take from it a valuable element,—the power to sell when he pleases; and you take from others the power to buy. If you hold that the mere survey or order of the board of directors is an appropriation of the land, you lay an embargo upon the right of the owner to sell, and this amounts to a "taking," within the meaning of the Constitution, for, while it is true that such location cannot be considered an appropriation as to the owner, and that nothing but actual payment will affect his right, yet if you hold it as an appropriation of the land as to a rival company and others, it inevitably affects the owner, because if he cannot find a purchaser, of what avail is his estate during the continuance of the embargo? Its effect upon him is direct, and repugnant to that provision of the Constitution which says that his property shall not be taken or damaged without just compensation, If you continue this embargo a day, it may be vastly damaging to him. The case of *Sioux City & D. M. Ry. Co.* v. *Chicago, M. & St. P. Ry. Co.*, 27 Fed., 770, is not applicable. That was under a law allowing the company to take and hold so much land as might be necessary for the location and construction of the railroad, and proceedings had been instituted for condemnation, and the competing company was a *pendente lite* purchaser. The law governing that case provided that application might be made to a sheriff to appoint commissioners to assess damages, and Judge Shiras declared that "from the time the application is made to the sheriff the condemning company has a right which cannot be defeated by the owner in conveying a right of way to the rival company." He thus dates the birth of the right of the condemning party from the commencement of proceeding, and he says that whether such right can in any case antedate the application to the sheriff was open to question even under that statute. No other authority is cited to sustain the claim of the defendant that its rights dated from its survey that has any bearing, and we have seen that the Sioux City Case does not sustain the pretention of the defendant tested by the law of this State. The statute in that case declared that the company might

take and hold for location, and did not, as our statute does, provide first for a proceeding in court; and there was reason to say that when an actual location was made under the Iowa statute it gave an inchoate right; but our statute, if constitutional, only allows an entry on the land for examination. It only defends the company from an action of trespass for unlawful entry, but confers no right. It is purely preliminary. It is the proceeding in court alone which vests any right.

Another question arises under the contention that the deed from McKell to the Kanawha, Glen Jean & Eastern Company is fraudulent as to the rights of its rival company. That question is answered by what I have just said. The statute of fraudulent conveyances has no reference to such a subject, but only the principle of equity that one man shall not purchase what another man has already obtained from the same man, under principles of courts of equity; but in order to apply this rule, he who claims to be first must be one who has a vested right in the property at the time of the conveyance alleged to be second.

Another question is whether equity has jurisdiction, or whether, before applying to it the Kanawha, Glen Jean & Eastern Railroad Company must vindicate its title by an action at law before going into equity, as if it were purely a question between two distinct adverse titles. It is seriously contended in this case that equity has no jurisdiction. I had thought that, wherever irreparable injury was being done to real estate, jurisdiction in equity to enjoin it was unquestionable; and surely, where one railroad company is about to take from another its right of way land, that is an injury falling under the head of irreparable injury. The bill alleges that this ground is indispensable to the plaintiff company for its line of railroad. Both companies claim from a common source—McKell. It is not a claim of two distinct, hostile titles; but, if it were, the character of the act doing irreparable damage would give jurisdiction to equity, for it has often been held in this State, as elsewhere, that where a municipal corporation is about to remove buildings, or open a street through the land of a citizen, or where one railroad company is

about to take the right of way land of another company, and build its railroad on it, equity will stay the act until compensation paid. *Boughner* v. *Clarksburg*, 15 W. Va., 394; *Teass* v. *City of St. Albans*, 38 W. Va., 1, (17 S. E. 400); *Spencer* v. *Railroad Co.*, 23 W. Va., 406; 3 Elliott, R. R. § 1125; High, Inj. § 622. Of course, if equity would enjoin, as it often has enjoined, a railroad company or town from appropriating a citizen's land, it would enjoin one railroad company from appropriating land of another company. As said in *Spencer* v. *Railroad Co.*, *supra*, the owner may, as a matter of right, enjoin, because the Constitution defends his property until compensation paid, and the Constitution cannot be effectively enforced except by injunction; and must one railroad company allow another to take possession of land owned by it, indispensably necessary for its own use, and, on the theory that the claims are adverse, bring ejectment or trespass to establish its superior right? What would occur in the meantime? The company in possession would go on building its road, unless stayed by injunction, and why not resort to that at the outset, the only efficient remedy? This shows the fallacy of the idea that there must be first a resort to the law court.

The point is made that the conveyance from McKell to the Kanawha, Glen Jean & Eastern Company does not cover the land in controversy. It has an undisputed and indisputable initial point and a terminal point, and the line is rigid, and I think from its minute description there could be no difficulty at all in an engineer laying it down. I will not enter into details in this complicated matter. There is no doubt, as shown by the evidence, but that that deed was intended to convey the land in controversy, and the plaintiff company was in possession of it, having its roadbed there, and the defendant company was destroying it; so there is no doubt as to this deed covering that land. Placing ourselves in the situation of McKell and the company to which he granted, looking at the purposes for which the deed was made, viewing the surrounding circumstances, and taking the calls and the points therein, there can be no difficulty in locating this land. The main object of a description in a deed is not in and of itself to

identify the land,—that it rarely does, or can do, without helping evidence,—but to furnish the means of identification; and, when this is done, it is sufficient. That is certain which can be made certain. By the aid of extrinsic evidence, surrounding circumstances, and the calls, this land can clearly be identified. *Thorn* v. *Phares*, 35 W. Va., 771, (14 S. E. 399); *Warren* v. *Syme*, 7 W. Va., 474; *Adams* v. *Alkire*, 20 W. Va., 480; *Simpkins* v. *White*, 43 W. Va., 125, (27 S. E. 361); Devl. Deeds, §§ 1012, 1039. McKell was the only party to the condemnation proceeding under which the defendant claims, and he disclaimed any right, and informed the court that the plaintiff company owned the land, and filed his deed to it, thus giving notice to the defendant company of the rights of the plaintiff company; but the plaintiff company was not made a party, and its rights were not affected by the decree of condemnation. It was a necessary party under section 6, chapter 42, Code. The circuit court enjoined the defendant company from taking possession and building its road on the land of the Kanawha, Glen Jean & Eastern Company, conferred upon it by said deed, until the defendant company should, in the manner prescribed by law, obtain right of way from the plaintiff company. In this, I think, the circuit court was right, and I would affirm its decree.

*Reversed.*