# CHARLESTON.

## WEST VIRGINIA S. L. R. R. Co. *v.* BELINGTON AND NORTHERN R. R. Co.

### Submitted June 16, 1904—Decided December 6, 1904.

1.    RAILROAD—*Right of Way—Condemnation Proceedings.*

W. V. S. L. R. R. Co. on the 16th day of October, 1900, by the corporate action of its board of directors, duly adopted its line of railroad, of which a preliminary survey had been made through the lands of W. whereby it acquired priority of right to condemn the right of way through said land of W.; between the 15th of July, 1902, and the 5th day of August, 1902, the B. & N. R. R. Co. located and staked off its line of railroad through the land of said W. which was duly adopted as and for the location of its line of railroad, by the board of directors of said company, on the 3rd day of September, 1902; W. Va. S. L. R. R. Co. in September, 1902, by its engineer, staked out a line through the land of W., claiming it to be on the said line adopted by it on said 16th day of October, 1900, and commenced condemnation proceedings based upon the survey of September, 1902, which was shown to be at material variance from the said location of October 16, 1900, and in conflict with the adopted location of the B. & N. R. R. Co. *Held:* The line staked out in September, 1902, for the location of the railroad line of W. Va. S. L. R. R. Co. was a new location not adopted by corporate action of the company, and could not be the basis for condemnation proceedings. (p. 371).

2.    CONDEMNATION PROCEEDINGS.

*Quaere*—whether, under the circumstances of this case, the W. Va. S. L. R. R. Co. did not, by its delay of more than two years in prosecuting its condemnation proceedings after it had acquired the right to do so by its action of October 16, 1900, lose its right of priority thereto? (p. 372).

Appeal from Circuit Court; Barbour County.

Action by the West Virginia Short Line Railroad Company against the Belington & Northern Railroad Company and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

C. M. MURPHEY and A. G. DAYTON, for appellant.

ICE & ICE, REESE BLIZZARD, and SAMUEL V. WOODS, for appellees.

MCWHORTER, JUDGE:

This is a "battle royal" between two railroad companies as to the priority of location of right of way over a particular piece of ground. On the 9th day of December, 1902, the West Virginia Short Line Railroad Company, having given due notice thereof to J. W. Wheeler owner of the land purposed to be taken, the Burnsville and Eastern Railroad Company, the Belington and Northern R. R. Company, and the Washington Coal and Coke Company, corporations under the laws of the State of West Virginia, the latter being the owner of the coal under said land, filed its petition in the circuit court of Barbour county, proposing to condemn the strip of land 100 feet wide particularly described in the petition and plat filed therewith, marked "Exhibit A", containing 5.17 acres, and praying for the appointment of commissioners for that purpose. The Burnsville and Eastern Railroad Company and Belington and Northern Company, defendants, appeared to said notice and petition, and moved the court to quash the return of service upon them of which motion the court took time to consider, and the defendants were given until the 1st day of February, 1903, to file in writing with the clerk of the court such other motion, demurrer, pleas or answers to said notice and petition as might be good in law. At a regular term on the 20th day of February, the Belington and Northern Railroad Company entered its demurrer to the petition and moved to quash the return of service of the notice upon it, in which demurrer and motion the petitioner joined, and the said demurrer and motion were overruled. The Belington and Northern Railroad Company tendered and offered to file a plea in writing to the petition, to the filing of which the petitioner objected and moved that the same be rejected, but the court overruled the objection and per-

mitted the plea to be filed, and the petitioner replied generally thereto. The said special plea is to the effect that the defendant is a corporation duly organized under the laws of West Virginia with its principal office at Belington; that it was duly authorized to build and construct a railroad through the said county of Barbour from the town of Belington, down the west side of the Tygarts Valley River to the mouth of the Middle Fork River, and thence to a place at the mouth of the Buckhannon River, and acting with the powers granted it by its charter and organization, had located, laid out, and adopted by surveys, maps, and profiles thereof which had been duly certified and filed in the clerk's office of Barbour county court, and in the office of Secretary of State by resolutions properly adopted by its board of directors on the 3rd day of September, 1902, a route for the location and construction of its branch line railway as it might do under its charter and laws, from the mouth of the Middle Fork River in said county, down the west side of the Tygarts Valley River to the mouth of the Buckhannon River; and that the route for its said branch line of railroad had been surveyed and located through and over the land of the defendant J. W. Wheeler, which defendant was by proper proceedings seeking to condemn and acquire; and averred that the center line of petitioner's railroad as described in its petition in this proceeding and plat filed therewith, marked "Exhibit A", extending over and through the land of said Wheeler, did not correspond with the alleged location or either of revised lines of petitioner's said railroad over and through said land, but that the same was a wholly different line and location; and that no map or profile had ever been filed to show what portion of land of said Wheeler, petitioner was seeking to condemn to its use; and that said location as described in plaintiff's petition was not surveyed and laid out until the month of September, 1902, and that said line as surveyed conflicts in part with the line surveyed and adopted by defendant over and through the land of Wheeler. And for further plea said that the survey and location of defendant's said branch line of railroad over and through the land of said Wheeler, was made between the 15th day of July, 1902, and the 5th day of August, 1902, and a map and profile thereof filed in the county clerk's office of Barbour county on the 3rd of September, 1902; and that said survey and location were made prior to the survey made by

petitioner of its line of railroad over said land as described in its-
petition in this proceeding, and averred that the petitioner, the·
West Virginia Short Line Railroad Company, was now owned,
controlled and operated by the Baltimore and Ohio Railroad
Company, a corporation which owned and operated a railroad ex-
tending from Grafton in Taylor county up the east side of the
Tygart's Valley River to Belington in Barbour county and that
for said Baltimore and Ohio Railroad to construct and build a
road from the mouth of the Buckhannon River up the west side
of the Tygarts Valley River to Belington would be to parallel its-
own line of railroad, and averred that it was not the intention of
the said Baltimore and Ohio Railroad Company or of petitioner
to build and construct a railroad on the pretended location line·
now claimed by petitioner, but that the only purpose and object
of both petitioner and the said Baltimore and Ohio Railroad
Company was to fraudulently hinder, delay and prevent defend-
ant from contsructing its proposed line of railroad from the·
mouth of the Middle Fork River to the mouth of the Buckhannon
River in Barbour county; that in order to carry out this pur-
pose, the agents and employes of the petitioner and the Balti-
more and Ohio Railroad Company when defendant was attempt-
ing to acquire right of way for the construction of its said rail-
road over the lands of the defendant, J. W. Wheeler, and others
went to them and procured from them contracts, whereby said
land owners agreed not to sell or convey to defendant or to any-
one else a right of way over their lands, and defendants alleged
that said contracts were made for the express purpose of hinder-
ing and delaying the construction of its said line of railroad in
the manner set forth; and denied the right of petitioner to con-
demn and acquire a right of way over the land of J. W. Wheeler,
that would conflict in any manner with the right of way sought
to be acquired by defendant over said land and over which its
said line of railroad was located; and averred that the survey
and location of defendant's line of railroad over the land of
Wheeler was prior to that claimed by the petitioner; wherefore
it prayed judgment, etc. And on the said 9th day of Decem-
ber, 1902, the Belington and Northern Railroad Company filed
its petition in the same circuit court, for the condemnation of a
line of its railroad through the lands of said J. W. Wheeler,
having given due notice thereof to said Wheeler, the Burnsville

and Eastern Railroad Company and the West Virginia Short Line Railroad Company, praying for the appointment of commissioners for the purpose of condemning said property. On motion of the West Virginia Short Line Railroad Company, it was given leave until the 1st day of February, 1903, in which to interpose and file such motion, demurrer, pleas, and answers to notice and petition as might be good in law. On the 23rd day of February, said defendant, the West Virginia Short Line Rialroad Company, tendered its answer in the nature of a plea to plaintiff's petition, to the filing of which plaintiff objected; which objection was overruled and answer filed, and plaintiff replied generally thereto, in which plea it is alleged, 1st: that prior to the institution of this proceeding, this defendant instituted its proceedings to condemn and acquire the same land in whole or in part, mentioned in the petition, which proceeding was then pending in the same court; 2nd: averred that it was chartered on the 7th day of February, 1895, by which charter it was authorized to build a public railroad from New Martinsville by the most practical route to near Clarksburg, thence to the town of Belington in Barbour county with its principal office at Clarksburg, and was then operating its road from New Martinsville to Clarksburg, a distance of sixty miles, and proposed to complete the building of said line of railroad and was then engaged in the actual work of building and constructing its said road from Clarksburg, a distance of thirty-nine miles, as authorized by its charter; that before it began the building and construction of its said railroad, it caused the line therefor to be located from New Martinsville to Belington, which line was duly and legally adopted by the defendants, and maps and profiles thereof filed for record in the clerk's offices and in the office of Secretary of State as required by law; that said line was so located and legally adopted long before the location of the line of petitioner, the Belington and Northern Railroad Company, and the proper maps and profiles were on record in the proper offices long before the alleged location of the line of the petitioner, the Belington and Northern Railroad Company, and which prior location so adopted by defendant was through the land among others of the defendant Wheeler; 3rd: that the defendant desired and proposed to proceed with the contsruction of its said railroad, through the lands of said Wheeler, and that the land proposed to be taken belonging to Wheeler, when so tak-

en, would be used by it for the purpose of constructing, building, and maintaining its said road, and that said land was necessary for such purpose, and needed for public use, and when condemned by defendant would be devoted to such public use; 4th: that said land so sought to be condemned by it through the lands of Wheeler was necessary for the proper exercise of its corporate franchise, and that it could not enjoy and exercise its corporate franchise without the same; 5th: that by reason of prior location and adoption of its line, defendant had acquired priority to go through the lands of said Wheeler, and that the petitioner, the Belington and Northern Railroad Company, had not the right to acquire the land mentioned in its petition in so far as the same would interfere with defendant in acquiring the land mentioned and described in its petition against Wheeler for the said purpose, and prayed that this proceeding might be dismissed, and the defendant recover its costs. Certain facts were agreed by the parties in writing as to the issuance of the charters of the two Railroad Companies, respectively, and the authority thereby granted to each of them, and as to certain surveys, maps, and profiles made and filed by them, respectively, and agreed that extracts from the minutes of the stockkholders and directors' meetings offered in evidence should be admitted in lieu of the original minutes of such meetings. Depositions were taken by both companies and filed in the cases. On the 10th day of November, 1903, the two cases, by consent of the parties, having been submitted to the court, upon the question as to the rights of the respective plaintiffs Railroad Company, to condemn the real estate set forth in their petition, and to determine and ascertain which had the superior right to take and condemn the real estate described in their respective petitions and answers thereto as was claimed by both to be necessary for the rights of way for their respective railroads. It was ordered by consent that the two cases be heard together, and the testimony and agreement of facts and exhibits should be regarded as filed and made a part of both cases, whether formally filed in both or not, all of which being duly considered, the court was of the opinion and adjudged that the Belington and Northern Railroad Company was entitled to take and condemn the real estate in its petition mentioned and described, as against the West Virginia Short Line Railroad Company's petition, and that the case made by the Belington and

Northern Railroad Company was one in which the applicant had the lawful right to take the said property, described in its petition and notice for the purposes and public use set out in its petition, and that said lands so proposed to be taken were necessary for the said purposes, and the West Virginia Short Line Railroad Company objected and excepted to the opinion and judgment of the court, and moved the court to set aside such judgment, which motion was overruled, to which action in overruling said motion, the West Virginia Short Line Railroad Company excepted and obtained from this Court a writ of error and *supersedeas,* claiming that it was error to hold that the said Belington and Northern Railroad Company, from the pleading and facts in the case, was entitled to the superior right to take and condemn the real estate sought to be condemned by petitioner, and that it was error for the court to fail and refuse to hold that plaintiff in error had the superior right as against said Belington and Northern Railroad Company to take and condemn said real estate. It appears from the record that a preliminary survey was made by the Short Line Railroad Company through the land of defendant Wheeler, about the last of September or early in October, 1900; that at a meeting of the board of directors of said Company held on the 16th of October, 1900, the following action was taken:

"Whereas, it appears that on the 15th day of October, 1900, at a meeting of the stockholders of this Company the following resolution was adopted:

"Whereas, it is expedient for the purpose of avoiding difficult curves and undesirable locations to change and revise in part the line adopted by this Company on the 25th day of August, 1900, extending from Clarksburg to Belington. Be it

"Resolved, that the portion of said line extending from the mouth of the Buckhannon River in Barbour County, to the town of Belington in said County, be revised and altered in conformity with the accompanying map and profile and that the location and route shown upon the map and profile hereto attached, following the course of the Tygart's Valley River, from the mouth of the Buckhannon River to Belington, be adopted as the location and route for the railroad of this Company between the points aforesaid. And be it further

"Resolved, that a copy of this resolution be certified by E. M. Goodwin, Acting Secretary of this Corporation, to the Secretary

of State, to be by him recorded as provided in Section 33 and subsection 5 of Section 50 of Chapter 54 of the Code of West Virginia; and the Chief Engineer of this Company is likewise instructed to cause to be made a copy of the accompanying map and profile, to be duly recorded in the office of the Secretary of State and in the offices of the Clerks of the County Courts of Harrison and Barbour Counties, as provided by law:    Now, therefore, be it

"Resolved, that the action of said Stockholders in the premises be and they are hereby ratified, approved and confirmed, and adopted as and for the actions of this Board; and the line finally adopted under said resolutions be adopted as the location and route of the road of this Company between the points therein named."

This action of the board of directors of the West Virginia Short Line Railroad Company under the rulings of this Court in case of C. & O. Ry. Company against Deepwater Ry. Company, decided at the present term was a sufficient location of said route, and gave the West Virginia Short Line Railroad Company the priority of right to condemn the same on that particular location so adopted for its use as a public railway.    Pierce on Railroads, p 157; *Railroad Co* v. *Railroad Co.,* 141 Pa. St. 407; *Kanawha & R. R. Co.* v. *Glen Jean & R. R. Co.,* 45 W. Va. 119; 2 Lewis on Em. Dom. secs. 306 and 307; 3 Elliott on Railroads, sec. 927. From that date, the 16th of October, 1900, until the 19th of November, 1902, no steps were taken to exercise its right so acquired by the West Virginia Short Line Railroad Company, when it seems to have been quickened into life by the action of the Belington and Northern Railroad Company, which in July, 1902, began to survey a line on the west side of the Tygart's Valley River between the mouth of the Middle Fork River and the Buckhannon River.    This line was surveyed and staked out upon the ground from the 16th of July to August 5th by the engineer and his assistants of the Belington and Northern Railroad Company, and a map and profile thereof made, and at a meeting of the board of directors of the Belington and Northern Railroad Company on the 3rd day of September, 1902, the same was "ratified and adopted as the final location of said Commpany's branch railroad between said points."    Mr. Lemley, the assistant engineer of the West Virginia Short Line Railroad Company, says he was in-

structed to relocate the line of said Company from Craigmore to Belington in July, 1902, purchase rights of way and proceed with the construction as rapidly as possible; that he retraced the location from Tygart's Junction to Belington after the 1st of August, 1902. He says they aimed to follow the original location as close as possible, and made plats through the properties which had been purchased, and which were placed on record with the deeds. He said he did not file in the clerk's office a map or profile of relocation of the said road; that it was not necessary to file a retracing. He was asked if the relocation of that line of road made by him occupied the same ground as the preliminary survey made in 1900. He said they retraced the location made in 1900 as close as it was possible to do from the stakes that remained in the ground from the time that they made the relocation. It is insisted by counsel for the Belington and Northern Railroad Company, that the location laid out by the Short Line Railroad Company and sought to be condemned and as described in its petition, and the map "Exhibit A," describing the strip to be condemned, is a new location and not that which was adopted by the resolution of its board on the 16th of October, 1900. If this be true and there is a material departure from that location so adopted in 1900, then the action of the board would be necessary to adopt the new location made by its engineers in 1902. Being a new location and different from that adopted by the board of directors October 16th, 1900, the same corporate action is required to adopt it as a final location as was required to adopt the preliminary survey of October, 1900: "The mere fact that an engineer alone surveyed and marked out a line is not sufficient to amount to a valid appropriation of the location by the company, and it cannot afford ground for proceedings against a rival company occupying that line." Wood on Railroads, sec. 269 and authorities cited. This action was not taken on the part of the board. The engineer H. S. King of the Belington and Northern Railroad Company, who made the survey and location adopted by the Belington and Northern Railroad Company, made the survey and staked out the line upon the ground, and testifies that he took some measurements between the two lines made for the Short Line Railroad Company in 1900, and that made by the Short Line Railroad Company in 1902, which he supposed was made by Mr. Lemley; that staton 35 of the 1902 survey was 47

feet above station 37x28 of the old Short Line; that station 47x 75 of 1902 survey by the B. & O. is 59 feet above station 47 of the old Short Line. Station 58 of the 1902 survey by the B. & O. was 95 feet above station 59 of the old Short Line survey. Witness was not sure as to whose land this was on, but thinks it was on Swick's land just across the property line from Wheeler. Asked why he spoke of it as the "1902 survey by the B. & O." said "Because it was made in 1902. I suppose that it was the B. &.O. people there at that time, and the line was run by their people," that it was his understanding that the B. & O. engineers ran that line in 1902. The witness was asked to "look at the map filed as 'Exhibit A with Petition' and also the map filed as 'Profile and Map W. Va. S. L. R. R. No. 4, October 15, 1900, Mouth Buckhannon River to Belington' and state the relative length of the 8-degree curve as shown on the lines on those two maps, through the land of J. W. Wheeler." Ans. "One of them is 633.7 feet, one is 570 feet, the difference is 63.7 feet." "The one 'Exhibit A with Petition' is the longer by 63.7 feet." And he further says the two lines on the map "Exhibit A with Petition" and "Exhibit Profile and Map W. V. S. L. R. R. No. 4, Oct. 15, 1900, Mouth Buckhannon River to Belington" cannot be made to coincide on the ground when there is the difference in the length of the 8-degree curves of 63.7 feet as shown on the maps. V. C. Norton, chief engineer of Belington and Northern Railroad Company, testifies, the survey adopted by the board of directors of said company September 3, 1902, as the line of their road, was run by H. S. King engineer under his direction, and was a location line staked on the ground between July 15, 1902, and August 5, 1902. When questioned as to the map filed as Exhibit "Profile and Map W. Va. S. L. R. R. No. 4, October 15, 1900, Mouth of Buckhannon River Belington" and the map marked "Exhibit A with Petition," and asked to state the difference between the line of Railroad as represented on said maps through the land of J. W. Wheeler, said, if actually run and placed on the ground, they would not occupy the same ground; that "the eight degree curve on one is 63.7 feet longer than the other," and that "Whenever you run a curve on a ground and turn a tangent to said curve, that tangent will have a certain bearing, and if you run 63.7 ft. farther on that curve and turn tangent, you will be going in an entirely different direction, and

in going about 1100 ft. on the tangent shown on the maps, the end of the tangent would be in the neighborhood of 80 ft. apart." He testified that he had examined the calls of the line of railroad made for the Short Line Railroad Company by Mr. Lemley in 1902 and compared them with the line of railroad represented on Exhibit "Profile and Map W. Va. S. L. R. R. No. 4, October 15, 1900, Mouth of Buckhannon River to Belington," between the Buckhannon River and the mouth of the Middle Fork River, and states "there are no two curves or no two tangents of the same length." Mr. Norton corroborates the testimony of engineer King as to the difference of location in October, 1900, and that in 1902. J. W. Wheeler testified that he saw the line that was run in the fall of 1900. Saw some stakes with figures on them, but did not understand them. Was asked "About how far from the river was this line as you observed it, located?" Ans. "Places I should judge to be a 100 feet or over, other places not near so far." He says a line was run through his land about September, 1902. "I do not know whether it was Mr. McLemley or his assistants. We all then understoood and called them the B. & O. engineers;" that "Just previous to that line being run there were other engineers had cut a line through there. We called them Wabash engineers and they had run a line through above this old line as we called it or the West Virginia Short Line. About the same time, the B. & N. engineers was running a line and met not far from my line above I think. My information from what we called the Wabash engineers, then some time after, in September, I presume, the B. & O. engineers according to my information runs a line over nearly, if not quite the same ground or line that the Wabash engineers run. I saw the stakes. I mean that the Wabash engineers and B. & O. engineers." He was asked to state "how far in your opinion is the line last run by the W. Va. Short Line R. R. Co. through your land, above the first line run by it in 1900." Ans. "Well, in places I would say it was 100 feet, and then there are places, two places that I should say I notice, that is not quite 100 feet, that is just guessing at it. I never measured it." On cross-examination, he is asked if he made an actual survey, or was his statement based on anything else than his recollection of the first line and his belief in this variance was from such recollection of it. Ans. "I did not make any survey, but I seen the lines recently and most of the

old lines can be traced today." It is very clear from the evidence that the Short Line Company was resting satisfied with the advantage of priority of right to condemn, it had acquired in the location of its line in October, 1900, until the Belington and Northern was proceeding to establish and locate its line above that of the Short Line, when it immediately took steps to relocate its line through the land of defendant Wheeler. The great preponderance of the evidence is that this location of September, 1902, is from 47 to 100 feet above the location of October, 1900, and is in fact a new location. In its attempt to strain its location of October, 1900, sufficiently to prevent the location of a competing line, it found itself so far above it as to amount to an abandonment of said location and occupying ground without authority. There is no evidence directly on that point, but it appears from the record almost certainly that the location of the Belington and Northern would interfere but little if any with the location of the Short Line of October, 1900. The relocation by the West Virginia Short Line in 1902 and its proceedings to condemn it as relocated is an abandonment of its right of priority in the line located by it in October, 1900, if indeed it had not already lost its priority of right to condemn by its prolonged inactivity. This question does not arise in this case as the new location of 1902 of the West Virginia Short Line Railroad Company was never adopted by corporate action and that of the Belington and Northern was duly adopted, giving it the right of priority over the line attempted herein to be condemned by the two companies respectively so far as the lines conflict, but the circumstances of the case strongly suggest the question whether the West Virginia Short Line Railroad Company exercised reasonable diligence in prosecuting its work while holding its right of way, to the exclusion of all others. In this day of the rapid development of the resources of the State of West Virginia when the policy of the State is to press to the front her commercial and industrial interests in active competition with the progress of her sister states, considering the topography of her territory, that railroads in the mountainous portions of the State can only be constructed along the streams and on many of which there is room for no more than one line on the same side of the stream, would it not be decidedly against the public interests to permit a railroad company by taking the initiatory steps or proceedings by

adopting a location for its line simply by making a preliminary survey or even a permanent survey and location of its line, and then stop all proceedings, holding the location to the exclusion of all others, closing to those who would gladly open up the way, the only practical route, thus cutting off all competition, and creating a monopoly as far as that particular section of the state is concerned? Is it not really an abuse of the right of eminent domain? Do not the public interests demand· that a corporation thus invested with this strong arm of the law, should use the power conferred, with due regard to the rights· of the public, and use diligence in prosecuting the work it has been, by its charter, commissioned to perform, and which it has undertaken presumably for its own profit? In that excellent work, Elliott on Railroads, Vol. 3, sec. 927, we are told: "When a proposed line has been regularly located and staked off, and the expense thereof has been paid, the corporation by which it is done has a prior claim to the right of way for a *reasonable time,*" and in 2 Lewis on Eminent Domain, sec. 306, it is said "A priority once obtained in any of the ways or cases above specified, may be lost by *laches* in following it up, or by permitting another company to occupy and build over the same property." In case at bar there was a lapse of more than two years from the date of the adoption of its line by the West V.irginia Short Line Company, from the mouth of Buckhannon River to Belington before taking any steps to procure the right of way either by purchase or condemntion, it was then inspired thereto by the action of a competing railroad company, in taking measures to acquire the right of way through the same property. There is no error in the judgment and it is affirmed.

*Affirmed.*