INDIANA POWER COMPANY *v.* ST. JOSEPH AND ELKHART POWER COMPANY.

[No. 19,522. Filed March 18, 1902. Rehearing denied June 6, 1902.]

EMINENT DOMAIN.—*Hydraulic Companies.*—*Waters and Water Courses.*— A power company organized under §4827 *et seq.* Burns 1901, authorizing any company organized under its provision to appropriate land for such use, may, by filing with the clerk of the court an instrument of appropriation, as required by such statute, condemn and appropriate, under the right of eminent domain, lands owned and held by another power company as a mere private individual upon which the latter company was preparing to construct similar works but had failed to file appropriation proceedings as provided by statute. *pp. 43–50.*

SAME.—*Damages.*—*Hydraulic Companies.*—*Waters and Water Courses.*— In a proceeding by a water company to appropriate land under §4827 *et seq.* Burns 1901, for the construction of its plant, the measure of damages for land taken from a similar company which had not complied with the statute so as to enable it to hold the land as against the power of eminent domain, given by such statute, is the value of the land taken; since no franchise had been acquired by the latter company. *pp. 50, 51.*

Indiana Power Co. *v.* St. Joseph, etc., Power Co.

APPEAL AND ERROR.—*Rehearing.*—*Waiver.*—Questions not presented on the original hearing will not be considered on a rehearing. *pp. 51, 52.*

From St. Joseph Circuit Court; *Lucius Hubbard,* Judge.

Proceedings by the St. Joseph & Elkhart Power Company to appropriate lands owned by the Indiana Power Company. From a judgment in favor of the former, the latter appeals. *Affirmed.*

*F. Winter, A. L. Brick, D. D. Bates, F. F. Reed, W. L. Stonex* and *C. C. Black,* for appellant.

*C. W. Miller, J. Drake, A. Anderson, J. DuShane* and *W. G. Crabill,* for appellee.

DOWLING, J.—Appeal by the Indiana Power Company from a judgment against it in a proceeding brought by the St. Joseph & Elkhart Power Company to appropriate certain lands claimed by the Indiana Power Company, and situated upon opposite banks of the St. Joseph river, in the county of St. Joseph. The proceedings were commenced by the appellee by filing instruments of appropriation in the office of the clerk of the St. Joseph Circuit Court under the provisions of the act for the incorporation of hydraulic companies. Acts 1865 (s. s.), p. 132, §4827 *et seq.* Burns 1901, §3696 *et seq.* R. S. 1881 and Horner 1901. Over the objections of the appellant, appraisers were appointed to assess the damages of the appellant, and afterwards made their report in writing. By answers and exceptions to the report, the appellant challenged the right of the appellee to appropriate its lands, and objected to the assessment of damages as too small. Many errors are assigned, but all of the questions necessary to be decided may be grouped under two principal heads. Had the St. Joseph & Elkhart Power Company the right to appropriate the lands of the Indiana Power Company, and was there error in the assessment of the damages?

Both corporations were organized under the statute for the incorporation of hydraulic companies. Acts 1865 (s. s.), p. 132, §§4827-4838 Burns 1901, §§3696-3707 R. S. 1881 and Horner 1901. The object of each company, as stated in its articles of association, was to construct or acquire a dam or dams across the St. Joseph river, in the counties of St. Joseph and Elkhart, with all necessary canals, pools, basins, etc., for the production and distribution of hydraulic power. The appellant, the Indiana Power Company, was incorporated December 14, 1899. Immediately upon its organization, and the election of its directors and officers, it accepted and adopted the preliminary surveys and plans made prior to its organization by its civil engineer. It also employed a civil engineer to make all further surveys, plans, and maps of the proposed site for its dam, and plans and specifications of all other work in connection therewith. December 14, 1899, the appellant contracted for land on which it expected to build the south end of its dam and canal, and afterwards, on March 10, 1900, purchased the same for $300. On March 2, 1900, it marked off the ground on both sides of the river, herein sought to be appropriated, according to the plans for the construction of its proposed dam, etc., as then contemplated, by setting out stakes on lines corresponding with the civil engineer's surveys, plans, and maps at the points selected therefor, such staking out being done for the guidance of its workmen in making the expected excavations for the construction of said dam and canals, and for the erection of all necessary structures. March 5, 1900, the appellant purchased and became the owner of land on the north side of the St. Joseph river, on which to build the north end of its dam and canals, paying $500 therefor. Prior to the commencement of these proceedings the Indiana Power Company had paid out for surveys, plans, specifications, etc., and for the purchase of lands herein sought to be appropriated, $2,323.32. The lands so owned by the appellant, and described in the

instrument of appropriation of the appellee, were sufficient in area for the construction of appellant's dam and abutments, power-houses, bulkheads, and wheel-pits, and for the completion of its dam with its connections, and consisted of five and fourteen-hundredths acres of land. The character of the St. Joseph river is such that only one dam can be constructed thereon in St. Joseph and Elkhart counties, between the cities of Mishawaka and Elkhart, in addition to the dams already built, and the proposed appropriation of the lands described in the instrument, filed therefor by the appellee, will entirely destroy the value of the said premises, and of the remaining lands of the appellant, as a site for the location and construction by the appellant of its proposed dam.

The appellee, the St. Joseph & Elkhart Power Company, was duly organized February 27, 1900, and proceeded at once to appoint its directors and to choose its other officers. On March 16, 1900, it filed in the office of the clerk of the St. Joseph Circuit Court its complaint and instrument of appropriation, for the purpose of condemning and appropriating one and ten-hundredths acres of land on the north side of the St. Joseph river, then owned by the said Indiana Power Company, and on the same date it filed its petition to appraise the damages which the Indiana Power Company would sustain by such appropriation. On the 19th day of March, 1900, the appellee filed its instrument of appropriation for two and eighty-four-hundredths acres on the south side of the St. Joseph river, owned by appellant, and, also, for an additional one and two-tenths acres on the north side of the St. Joseph river, in the tract then owned by appellant, and on the same day it filed its petition for the appointment of appraisers to assess the damages occasioned by the proposed appropriations.

The statute under which both the appellant and the appellee were organized authorizes any company incorporated under its provisions to appropriate lands for the purpose of

constructing a dam across a river, for locks around such dam, for races and aqueducts to convey the water from such dam to a convenient place for its use as a power to propel machinery, and sufficient grounds, not exceeding ten acres, upon which to use said water-power for the purposes aforesaid. To carry out the objects of its organization, this statute requires that any company organized under it shall forthwith deposit with the clerk of the circuit court, or other court of record of the county where the land lies, a description of the rights and interests intended to be appropriated; and it declares that such lands, rights, and interests shall belong to such company, to use, for the purposes specified in the act, by making or tendering payment as in said statute provided. It also states that the company may, by its directors, purchase any such lands or interest of the owner, and that on such agreement the owner shall convey the premises so purchased in fee simple, or otherwise, as the parties may agree, to such hydraulic company. The act further provides for the appointment by the circuit court or other court of record in the county where the land lies, or any judge thereof in vacation, upon the application of either party, of three disinterested freeholders of such county to appraise the damages which the owner may sustain by reason of such appropriation. Upon the return of the report of the appraisers, with their assessment of the damages, to the clerk of such court, setting forth the value of the property which they assess to the owners separately, and the filing and the recording thereof, such company is to pay to said clerk the amount thus assessed, or tender the same to the party in whose favor the damages are assessed; and on making payment or tender thereof, in the manner required, the act declares that it shall be lawful for such company to hold the interest in such lands so appropriated. No provision for the filing of a map of the lands intended to be appropriated, corresponding to the requirement of the general railroad

act in that particular, is contained in the statute in' question. But, upon a careful reading of §4834 Burns 1901, §3703 R. S. 1881 and Horner 1901, it would seem that the deposit with the clerk of the instrument of appropriation was intended by the act to constitute the notice to be given of the location of the dam, etc.

Where such instrument of appropriation is filed, and lands are acquired by virtue of such proceeding, it is said, by many of the courts, that the corporation takes such lands by grant from the State, and that by reason of the taking in this manner they are impressed with a public use. The title so acquired is not a fee simple, but an easement, and can be enjoyed under such grant only for the purposes contemplated by the statute. It is true that the same section expressly authorizes the purchase in fee simple of lands by the corporation for the purposes of its organization, but it will be observed that the lands which may be so acquired are those which are described in the instrument of appropriation. In nearly all the cases where the courts have been called upon to decide the question of priority in right between conflicting claims to lands to be used for corporate purposes, they have held that the company by which the *location* is first made has the superior right. The difficulty arises in determining what acts constitute such location.

It is said in Mills, Eminent Domain (2d ed.), §47, that "It does not signify that the articles of incorporation of one are prior in date to those of the other, or that one has made preliminary surveys over a particular route, or has made purchases of individuals along that route. Until the survey is made and *filed,* the company would hold the land purchased as any other individual landowner, and such land could be condemned by the rival company upon compensation. The priority of construction gives no rights where another company has perfected its location first." *Morris, etc., R. Co.* v. *Blair,* 9 N. J. Eq. 635; *Titusville, etc., R. Co.* v. *Warren, etc., R. Co.,* 4 Leg. Gaz. 117; *Chesa-*

Indiana Power Co. *v.* St. Joseph, etc., Power Co.

*peake, etc.; Canal Co.* v. *Baltimore, etc., R.. Co.,* 4 Gill & Johns. 1.

Again, it is said in Randolph, Eminent Domain, §183: "Where one has purchased property with the intention of putting it to public use, he cannot be devested of it by a party seeking to condemn it for a similar use. But the purchase, to be effective, must be consummated before a location is made under the eminent domain. Where a corporation duly filed a survey of property required, and another corporation afterwards recorded a deed from the owner, executed in pursuance of an unrecorded agreement made before the survey, priority was given to the first corporation, because it was not affected with notice of the agreement. * * * Where the conflict is between parties seeking to condemn, that one shall prevail who first makes a location in accordance with the statute." *Indianapolis St. R. Co.* v. *Citizens St. R. Co.,* 127 Ind. 369, 8 L. R. A. 539; *Rochester, etc., R. Co.* v. *New York, etc., R. Co.,* 110 N. Y. 128, 17 N. E. 680; *Pocantico Water Works* v. *Bird,* 130 N. Y. 249, 29 N. E. 246; *Denver, etc., R. Co.* v. *Alling,* 99 U. S. 463, 25 L. Ed. 438. And in Lewis, Eminent Domain (2d ed.), §306, pp. 753, 754, the general doctrine is thus stated: "As to what is such a completed location as to secure priority must depend largely upon local statutes. We should say, in general, that it includes everything necessary to perfect the right to proceed and condemn the property. * * * Where priority of right has been secured by priority of location, it can not be defeated by a rival company agreeing with the owners and purchasing the property."

The opinion of Shiras, Justice, in *Sioux City, etc., R. Co.* v. *Chicago, etc., R. Co.,* 27 Fed. 770, has been commended as a very clear and forcible statement of the principles applicable in cases of conflicting claims to priority: "It is certainly equitable that a company, which in good faith surveys and locates a line of railway, and pays the expense

Indiana Power Co. *v.* St. Joseph, etc., Power Co.

thereof, should have a prior claim for the right of way for at least a reasonable length of time. The company does not perfect its right to the use of the land, as against the owner thereof, until it has paid the damages, but, as against a railroad company, it may have a prior right, and better equity. The right to the use of the right of way is a public, not a private, right. It is, in fact, a grant from the state, and although the payment of the damages to the owner is a necessary prerequisite, the state may define who shall have the prior right to pay the damages to the owner, and thereby acquire a perfected title to the easement. The owner cannot, by conveying the right of way to A, thereby prevent the state from granting the right to B. All that the owner can demand is that his damages shall be paid, and, subject to the right of compensation to the owner, the state has the control over the right of way, and can, by statute, prescribe when, and by what acts, the right thereto shall vest, and also what shall constitute an abandonment of such right."

The organization of appellant as a corporation, under the act for the incorporation of hydraulic companies, the recording of the articles of association, the selection of the site of the dam, the acquisition of the premises intended for the dam by deeds from the owners, did not, in our opinion, operate as a grant of those lands, or of any interest in them by the State to the corporation, nor impress upon them any public use. On the contrary, the appellant was at liberty to sell such lands in fee simple, to subdivide them, and to apply them to any private purpose whatever.

The sole connection of the State with the purposes of the appellant was its grant under the statute of the franchise of becoming a corporation, and exercising the powers conferred upon such corporation by the statute. But the appellant did not proceed further in the exercise of its statutory powers, nor in any way indicate its intention to devote

any lands to a public use. In the present case, as in many others, the question of priority of right is not free from difficulty, and in determining it we can not disregard the express language of the statute which declares that immediately after its organization "Such company shall forthwith deposit with the clerk of the circuit, or other court of record of the county where the land lies, a description of the rights and interests intended to be appropriated; and such lands, rights, and interests shall belong to such company to use for the purposes specified by making or tendering payment as hereinafter provided."

The appellee proceeded strictly according to the terms of the statute. The appellant held certain lands, but, as is stated in the authorities, it held them as a private individual might. Being so held, they were subject to the right of eminent domain, and could be appropriated by the State for the public use expressed in the instrument of appropriation filed by the appellee. Immediately upon the filing of that instrument, in the words of the statute, "they belonged to such company, to use for the purposes specified, by making or tendering payment as provided."

The remaining question as to the assessment of damages does not require extended discussion. The property held by the appellant, described in the instrument of appropriation of the appellee, was land only. No franchise of the appellee was appropriated, nor was any right taken from it. The point at which the dam was to be built was not the only place at which it could be constructed. In that respect this case differs from those relating to mountain passes, islands in a river, or other circumstances giving to the particular locality a peculiar value, no matter by whom owned or held. The appraisers could do nothing more than assess the value of the lands taken, and we think that all evidence touching the value of the premises as the site of a mill-dam was properly excluded. Under the circumstances set forth in the pleadings, and disclosed by the proof,

the appellant had not acquired a perfected right to build a public dam at that place.

Numerous authorities are cited in the brief of the appellant, and all of them have received careful attention. We have found nothing in them, however, which authorizes such a construction of the statute of this State as would give to the appellant a prior right to build a dam at the point described in the instrument of appropriation, and in the pleadings in this cause. Nor do we find anything in them to sustain the claim of the appellant for compensation for anything more than the value of the land taken, considered independently of the inchoate design of the appellant to construct a dam there for hyhraulic purposes.

Applying the views herein stated to the various questions involved in the assignment of errors, we are of the opinion that all of those questions were correctly decided by the trial court. Judgment affirmed.

## ON PETITION FOR REHEARING.

DOWLING, C. J.—A very careful reëxamination of the points decided in this case has been made in connection with the briefs upon the petition for a rehearing. We have discovered no ground for any modification of the opinion heretofore announced.

It is indisputable that the appellant had the right to sell or otherwise dispose of the lands acquired by it by purchase, and to abandon its enterprise. It is equally evident that under the statute authorizing the organization of companies for hydraulic purposes, the only public and unequivocal act by which such companies are empowered to indicate their intention to devote lands to a corporate and public use is by filing their instrument of appropriation in the office of the clerk of the county where the lands are situated. In the case before us, while the appellant was a hydraulic company, and had purchased lands in the vicinity of the

St. Joseph river, it had built no dam, nor had it begun the construction of such a work, further than to cause surveys to be made, plans to be prepared, and stakes to be set out for the guidance of its workmen.

The point is now made for the first time that the instruments of appropriation were insufficient because they failed to show the consent of the federal authorities to the construction of the proposed dam across the St. Joseph river, that river being a navigable stream. This point was not included in the original statement of points, nor referred to in the briefs on the hearing, and for that reason it can not be considered at this time. Rule 22. *Armstrong* v. *Hufty,* 156 Ind. 606, 630. Petition for a rehearing overruled.