Southern Ind. R. Co. *v.* Indianapolis, etc., R. Co.—168 Ind. 360.

ceeding in the same cause of action. The alleged misconduct of appellee in removing the child from Kentucky, beyond the jurisdiction of the McLean Circuit Court, without its consent or authority, did not in any manner enlarge the right of appellant under the decree thereof, in respect to the custody of the child, but possibly subjected her to be dealt with by such court as in contempt of its authority. *Joab* v. *Sheets, supra.*

It follows, and we so adjudge, that for the failure of the complaint to show jurisdiction, as required, of the court in controversy, the pleading was not sufficient to support the writ of *habeas corpus,* and therefore the court did not err in sustaining the motion to quash.

Judgment affirmed.

Hadley, J., did not participate.

---

SOUTHERN INDIANA RAILWAY COMPANY ET AL. *v.* INDIANAPOLIS & LOUISVILLE RAILWAY COMPANY.

[No. 20,827. Filed April 24, 1907.]

1. PROCESS. — *Return.* — *Corporations.* — *Officers.* — A summons served "by reading the same to ————, agent of" defendant railroad company, is insufficient as against a motion to quash, made on a special appearance. p. 364.

2. SAME.—*Total Failure to Serve.*—*Curative Statutes.*—Where there has been a total failure to serve a summons upon the agent or person designated by statute, §319 Burns 1901, §317 R. S. 1881, curing defective service, where the party can understand the meaning of such service, does not apply. p. 364.

3. APPEAL.—*Assignment of Errors.*—*Joint or Several.*—Where the two appellants "jointly say, and each of them severing from the other separately and severally says, that there is manifest error" in certain rulings, such assignment is several. p. 364.

4. PROCESS. — *Publication.*—*Length of.*—*Nonresidents.*—Publication of notice to a nonresident on March 15, 22 and 29, in a

Southern Ind. R. Co. *v.* Indianapolis, etc., R. Co.—168 Ind. 360.

weekly newspaper, the hearing of the cause being fixed for April 5, is sufficient under the act of 1905, (Acts 1905, p. 59, §4, §896 Burns 1905). p. 365.

5. PROCESS.—*Publication.—Improper Date Fixed for Hearing.*— Where publication is properly made, but a wrong time fixed for the hearing, the only effect is to delay the operation of such service to the regular return day of next term of the court. p. 366.

6. SAME.—*Publication.—Description of Land.—Railroads.—Eminent Domain.*—A notice by publication, omitting the county, but giving the congressional township and range of the lands sought to be condemned, is sufficient. p. 366.

7. PLEADING. — *Complaint. — Conditional Offers. — Railroads.— —Eminent Domain.*—A complaint by a railroad company for the condemnation of a strip of land belonging to another railroad company for a right of way is not rendered bad on account of an offer therein giving such other company the right to retake part of the appropriated strip and to join its roadbed with plaintiff's upon certain conditions. p. 367.

8. APPEAL.—*Complaint.—Initial Attack.*—Liberality in favor of a complaint will be exercised, where the initial attack thereon is made on appeal. p. 367.

9. PLEADING. — *Complaint.—Eminent Domain.—Railroads.—Description of Lands.—Statutes.*—Under §894 Burns 1905, clause 4, Acts 1905, p. 15, §2, the complaint in a proceeding to appropriate a railroad right of way, must set out, by a specific description, the location, general route, width and termini of the proposed way. p. 368.

10. SAME. — *Answer. — Eminent Domain. — Railroads.*—Where the complaint in a railroad right of way condemnation proceeding substantially follows the statute (§894 Burns 1905, Acts 1905, p. 59, §2), objections thereto must be raised by an answer. p. 368.

11. RAILROADS.—*Lands Held by.—Whether Subject to Appropriation by Others.*—Lands owned in fee simple by a railroad company may be appropriated by another public-service company, unless such railroad company has legally located its road thereon. p. 370.

12. SAME.—*Eminent Domain.—Conflicting Claims as to Rights of Way.*—Where two railroad companies claim the same right of way, the company making the prior specific location has the legal right to such way. p. 371.

Southern Ind. R. Co. v. Indianapolis, etc., R. Co.—168 Ind. 360.

13. RAILROADS.—*Location.*—*Whether Filing Plat of, must Precede Condemnation.*—Under §5152 Burns 1901, §3902 R. S. 1881, it is not necessary that the filing of the plat of the location of a railroad shall precede the institution of condemnation proceedings for the right of way.  p. 372.

14. SAME.—*Location.*—*Conflicting Claims as to Right of Way.*— The filing of the map and profile of the right of way of a railroad, in the absence of unnecessary delay, precludes rival companies from appropriating the same lands for a right of way.  p. 374.

15. SAME.—*Location.*—*Maps.*—*Sufficiency.*—A map of a proposed railroad right of way, designating a single line through a strip, but giving no information as to the width of the proposed right of way, or whether such line is the median line, is insufficient.  p. 374.

16. SAME.—*Location.*—*Recorded Deeds.*—The fact that a railroad company secured and recorded deeds to its intended right of way, particularly describing the lands to be used, does not constitute a legal location of such railroad.  p. 374.

17. NEW TRIAL. — *Railroads.* — *Eminent Domain.*—*Interlocutory Order Appointing Appraisers.*—A motion for a new trial is not permissible in presenting for review questions arising upon an interlocutory order adjudging lands subject to appropriation by a railroad company for its right of way, and appointing appraisers to make an award.  p. 375.

18. SAME.—*Insufficient Evidence.*—*Contrary to Law.*—In civil cases, general assignments that the verdict is not supported by sufficient evidence and that it is contrary to law, are sufficient reasons for a new trial.  p. 376.

19. APPEAL.—*Assignment of Errors.*—*Specificness.*—*New Trial.* —*Insufficiency of Evidence.*—*Eminent Domain.*—*Interlocutory Orders.*—Assignments of errors, on appeal from an interlocutory order adjudging defendant's lands subject to appropriation for a railroad right of way, and appointing appraisers to make an award, that the evidence was insufficient to support the finding and was contrary to law, present no questions, specific assignments being necessary.  p. 376.

20. JUDGMENT.—*Motion to Modify.*—Where the form or details of a decree are objectionable, a motion to modify same is the proper practice.  p. 377.

21. SAME.—*Interlocutory.*—*Subsequent Modification.*—Interlocutory orders are subject to subsequent modifications.  p. 377.

From Owen Circuit Court; *Joseph W. Williams,* Judge.

Condemnation proceeding by the Indianapolis & Louisville Railway Company against the Southern Indiana Railway Company and another. From an interlocutory decree for plaintiff, defendants appeal. *Reversed in part. Affirmed in part.*

*Willis Hickam, W. T. Abbott, E. C. Ritsher* and *Samuel R. Hamill,* for appellants.

*E. C. Field, H. R. Kurrie, J. R. Fowler* and *J. H. Robinson,* for appellee.

GILLETT, J.:—On March 14, 1906, appellee filed its instrument of appropriation, or complaint, as it is termed by the act of 1905 (Acts 1905, p. 59, §893 *et seq.* Burns 1905), to condemn, as and for a railroad right of way, a strip of land about nine miles in length, in Owen county. Appellant Southern Indiana Railway Company was made a defendant to the proceeding, as the owner of the real estate, while its codefendant the Equitable Trust Company was joined as a defendant, as a mortgagee. Appellants first appeared specially, and severally moved to quash the service upon them respectively, but their motions to quash were overruled. Several objections were then filed by appellants, and the cause was submitted to the court. During the trial appellee amended its complaint, and appellants, without demurring, severally addressed objections to the amended complaint, and the trial proceeded. Upon the conclusion thereof the court rendered a finding for appellee, that it was entitled to have the lands described in the amended complaint condemned and appropriated for the location, construction and operation of its railroad, and the court thereupon appointed appraisers to assess the damages. From such interlocutory order this appeal is prosecuted.

The first question which we are called on to consider is as to the service upon appellant the Southern Indiana Railway

364 SUPREME COURT OF INDIANA,

Southern Ind. R. Co. *v.* Indianapolis, etc., R. Co.—168 Ind. 360.

Company. The return of the sheriff on the notice is as follows: "I served this notice this 15th day of March, 1906, by reading the same to ————, agent of the Southern Indiana Railway Company, and by leaving with him a certified copy thereof." By section three of said act of 1905 (§895 Burns 1905), the notice is required to be served in the same manner as a summons in a civil action, and, therefore, we look to §318 Burns 1901, §316 R. S. 1881, for the controlling provision as to service upon a corporation. It was pointed out in *Toledo, etc., R. Co.* v. *Owen* (1873), 43 Ind. 405, under a section of the former code substantially similar to §318, *supra,* that the section fixes three grades of persons upon whom service may be had, and the court then added: "When the service under this section is upon an officer or person of the second or third grade, it should appear that the officer or officers of the higher grade or grades were not found in the county. Unless this shall appear by the return, or in some other proper manner, the service will be insufficient." It therefore appears to us that a return which not only fails to meet this requirement, but which even fails to show either the name of the agent or the character of his agency should be held insufficient, if directly and seasonably questioned. If there has been absolutely no service upon an agent or person upon whom the statute authorizes service in the particular circumstances, we do not perceive how the matter can be said to be cured by §319 Burns 1901, §317 R. S. 1881, for that section presupposes that there has been at least some kind of service upon the party. Appellee's counsel seek to parry the effort to procure a reversal as to the Southern Indiana Railway Company, by the contention that the assignment of errors is joint as to the appellants. The introductory part of such assignment is as follows: "The appellants, Southern Indiana Railway Company and Equitable Trust Company both jointly say, and each of them severing

NOVEMBER TERM, 1906.          365

Southern Ind. R. Co. v. Indianapolis, etc., R. Co.—168 Ind. 360.

from the other separately and severally says, that there is manifest error in the judgment and proceedings in this cause, and in the making and entering of record of the interlocutory order ˉby the court, in this"—then follows a number of specifications of error, separately numbered. The argument advanced by counsel for appellee is that this assignment merely questions the rulings of the trial court in each of the particulars which followed the language above quoted, but as appellants not only jointly, but "each of them severing from the other," assigns error, there is no basis for the claim that the assignment is merely joint as to parties. It is, as we view it, separate as to appellants, by reason of the words of severance, and the remaining language is sufficient to show that the ruling embraced in the assignment is separately questioned. *Sibert* v. *Copeland* (1896), 146 Ind. 387; *Armstrong* v. *Dunn* (1896), 143 Ind. 433; *Carver* v. *Carver* (1884), 97 Ind. 497; Ewbank's Manual, §138. It follows from what we have said that, because of the error of the court in refusing to quash the service as to the Southern Indiana Railway Company, the cause must be reversed as to it.

The Equitable Trust Company, whom we shall hereafter designate as the appellant, since it is the only party appellant which is concerned in what follows, contends

4. that the court erred in refusing to set aside the notice and quash the publication as to it. Said appellant, being a nonresident, service was attempted to be procured upon it by publication. The hearing was fixed for April 5, 1906, and publication was had as to appellant on March 15, 22, and 29, 1906. It is contended that there should have been a publication for the full period of twenty-one days, and that five days should have elapsed between the period of publication and the day set for the hearing. Section four of the act of 1905 (Acts 1905, p. 59, §896 Burns 1905) provides that the proof of service by publication shall show "publication for three successive

weeks in a weekly newspaper of general circulation, * * * the last publication to be five days before the day set for the hearing." This certainly does not require four publications, and as the hearing may be set, according to the statute, five days after the last publication, the law-making power must have intended, by requiring proof of publication for three successive weeks in a weekly news-paper, three publications in a weekly newspaper on its weekly days of issue, and regarded that "as publication for three successive weeks." *Bachelor* v. *Bachelor* (1804), 1 Mass. 256; *Swett* v. *Sprague* (1867), 55 Me. 190; *Alexander* v. *Alexander* (1889), 26 Neb. 68, 41 N. W. 1065. Any other construction would mean that at least eleven days must elapse after the third publication. Besides, as the service was not questioned under a special appearance, except by a motion to set aside the notice and quash the publication, it must be held that there was no error in the court's ruling, for at the least the service would have been sufficient for the regular return day of the next term, and, therefore, the defect, if any, afforded only a ground for delaying the hearing. See *Bratton* v. *Bratton* (1881), 79 Ind. 588. The description of the land, as set forth in the publication, was not insufficient because it did not in terms state that the land was in Owen county, Indiana. The description showed the congressional township and range, so that land of that description could be located, if in Indiana, and when to this fact is added the further consideration that the statute requires that the action should be commenced in the county where the land lies, it is apparent that the notice was sufficient as to the description of the lands. See *White* v. *Stanton* (1887), 111 Ind. 540; *Hyland* v. *Brazil Block Coal Co.* (1891), 128 Ind. 335.

It is objected that the complaint on its face discloses that appellee was seeking to condemn property which was

already devoted to a public use. The complaint
7. shows that appellee is seeking to take but a part
of the real estate of the Southern Indiana Railway
Company; how much will remain is left to conjecture. It
may be inferred, from an offer in the complaint, that the
Southern Indiana Railway Company had in contemplation
the building of a railroad over its adjacent lands, but the
pleading falls far short of showing on its face what amounts
to a legal location of a railroad on such lands.

The offer above referred to is also made the basis of an
attack upon the complaint, the objection being for the first
time raised by an assignment of error questioning the suf-
ficiency of said complaint. It avers the intent of appellee
to appropriate the lands, which are specifically described,
and, after averring that the right-of-way strip does not in-
clude the whole of the land of the owner, it is stated:
"That the appropriation of the right of way ˙herein
described is made subject to the defendant railway's right
to join its roadbed when built, up to and against the road-
bed constructed by the plaintiff. If the defendant elects
to construct its roadbed at some future day up to and
against the roadbed of plaintiff, it shall first pay to plaintiff
the actual cost to it of any right of way taken from the
plaintiff for said purposes, together with the actual cost of
so much of plaintiff's roadbed and construction work as
said defendant may use, and would otherwise be required
to construct." That there was no intent to appropriate,
except as the conditions annexed were made a constituent
part of the taking, cannot be so clearly affirmed from the
complaint that it can be said that the offer operated to
drag down the whole cause of action. There are many
objections which might be available on demurrer that
cannot for the first time be raised on appeal.
8. Where they are sought to be raised in the latter
manner there is much reason for liberality in favor
of the pleading, and none for strictness. Elliott, App.

Proc., §473. The stipulation in question might be regarded by the owner as beneficial, and after the defendants have passed it by in the trial court, and permitted costs to accumulate, and the time of the court to be occupied, we deem it our duty to resolve against appellant what might otherwise be regarded as a doubt concerning the intent of appellee to condemn in any event. See *Shoemaker* v. *Williamson* (1901), 156 Ind. 384.

In view of the time of attack, the complaint sufficiently complied with the fourth subdivision of section two of the act of 1905, *supra.* The location, general route, width and termini, which the subdivision refers to, relates to what is "sought," that is, the specific right of way which is sought to be taken from the party or parties defendant to the proceedings. Further objections are urged to the complaint, but we fail to perceive wherein it does not substantially follow the statute, and it is our opinion that other matters, which would afford sufficient grounds of objection to the taking, should be brought forward by the defendants. *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511, and see *Edwards* v. *Cooper* (1907), *ante*, 54.

The leading question in the case, as argued by counsel, is as to the right of appellee to seize lands which have been purchased by the Southern Indiana Railway Company for right of way purposes. We are in doubt whether the fourth assignment of error, which is nearest calculated to present this question, is sufficiently definite to require a determination of the suggested question, but, assuming, the result being not otherwise different, that the parties desire a decision upon the merits, as between appellant and appellee, we proceed, without passing on the technical sufficiency of said assignment of error, to a consideration of said question. It appears from the evidence that the Southern Indiana Railway Company is a railroad corporation, duly organized under the laws of this State, and that

it had undertaken the building of a branch line of railroad from a point in Vigo county to the city of Indianapolis, and for such purpose it had purchased tracts of land in Owen county (which included the strip in controversy), varying in width from one hundred feet to three hundred feet. The deeds, by which its purchases were consummated, have attached to each of them a plat, which purports to show the strip of land purchased, in its relation to the grantor's land, and each deed states the width of the purchase on each side "of the center line of the Southern Indiana Railway Company as now located and shown on attached plat." The deeds, however, are ordinary warranty deeds, and they contain no language which is calculated to limit the use to right of way purposes. It further appears that about $240,000 had been expended on the western end of the line, and that there has been an expenditure of about $128,000 in the purchase of terminal facilities at Indianapolis. At the time this action was commenced, work had been suspended on the line, owing to the financial embarrassment of the promoter thereof, and the greater part of the construction contracts had been canceled. No work had been done in Owen county, except concrete work at the Eel river crossing, and in the making of the preliminary survey, grubbing, and distributing a small amount of drainage pipe. The expenditure of said railroad company on these accounts in Owen county was $1,500, and $500 of that amount had been laid out upon the lands in question. Said railroad company filed a map and profile of its line in Owen county, on June 2, 1905. The map exhibited only a single line through the lands in question, and there was nothing thereon from which the width of the right of way could be determined. It is stated in appellant's brief that the strip described in appellee's amended complaint has for its center line a line which is fifty feet distant from the center line of the Southern Indiana Railway Company. There was evidence to the

370    SUPREME COURT OF INDIANA,

Southern Ind. R. Co. *v.* Indianapolis, etc., R. Co.—168 Ind. 360.

effect that said company purchased the lands, for which it has deeds, under an agreement with appellee that said lands should be for the common use of said companies, and it is also claimed that there was evidence of an admission that the Southern Indiana Railway would not be completed, but we shall not consider the effect of the last two items of evidence.

We proceed to determine whether, upon the evidence, it can be said that said lands were subject to condemnation for the purposes of appellee. The mere fact

11. that lands are held by a corporation which enjoys the right of eminent domain does not, *per se,* impress them with a public use, and we deem it clear that a railroad company cannot, simply by running its preliminary line, and purchasing, as an ordinary purchaser, the lands over which its survey has been extended, so impress such lands with a public character as to preëmpt them as against another company, which, as an instrumentality of the State, and to serve its purposes, has done what is necessary under the statute to subject the property to the servitude of a railway. *Indiana Power Co.* v. *St. Joseph, etc., Power Co.* (1902), 159 Ind. 42. It is to be remembered that if an unconditional fee has once lawfully vested in a railroad company, it is fully at liberty to dispose of it. 2 Elliott, Railroads, §§403, 424. Such a holding cannot be distinguished from that of an ordinary proprietor. There must be some step taken which amounts to a legal location of its line, for railway purposes, before a company can insist that for many miles ahead of its actual use and occupancy its real estate is not subject, under the general statute, to appropriation by another company. *Indiana Power Co.* v. *St. Joseph, etc., Power Co., supra; Williamsport, etc., R. Co.* v. *Philadelphia, etc., R. Co.* (1891), 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *Morris, etc., R. Co.* v. *Blair* (1854), 9 N. J. Eq. 635; *Utah, etc., R. Co.* v. *Utah, etc., R. Co.* (1901), 110 Fed. 879; *Barre R. Co.* v.

*Montpelier, etc., R. Co.* (1888), 61 Vt. 1, 17 Atl. 923, 4 L. R. A. 785, 15 Am. St. 877; *Kanawha, etc., R. Co.* v. *Glen Jean, etc., R. Co.* (1898), 45 W. Va. 125, 30 S. E. 86; *Minneapolis, etc., R. Co.* v. *Chicago, etc., R. Co.* (1902), 116 Iowa 681, 88 N. W. 1082; *Contra Costa, etc., R. Co.* v. *Moss* (1863), 23 Cal. 323; *Southern Pac. R. Co.* v. *United States* (1901), 109 Fed. 913, 48 C. C. A. 712.

The law under which each of the railroad corporations in question was incorporated only required that the articles of incorporation should designate the termini of the road, and the counties through or into which it would pass. There was, therefore, no grant to either of them of a specific right of way, and any conflict arising between them in respect thereto must be solved by priority of location. This can be accomplished, not. by ordinary acts *in pais,* but by some public act, which can be said, in a way at. least, to commit the company, as between it and the State, to a definite location. See *Ft. Wayne, etc., Traction Co.* v. *Ft. Wayne, etc., R. Co.* (1907), (Ind. Sup.), 80 N. E. 837. The proposition thus advanced is illustrated by *Tarpey* v. *Madsen* (1900), 178 U. S. 215, 20 Sup. Ct. 849, 44 L. Ed. 1042, where, in discussing the rights of a railway company and of an individual entryman, the court said: "We are of opinion that a proper interpretation of the acts of congress making railroad grants like the one in question requires that the relative rights of the company and the individual entryman must be determined, not by the act of the company in itself fixing definitely the line of its road, or by the mere occupancy of the individual, but record evidence, on the one part the filing of the map in the office of the secretary of the interior, and, on the other, the declaration or entry in the local land office."

There is much controversy in this case as to whether the institution of condemnation proceedings by appellee

can be said to amount to an appropriation in the absence of proof of the filing of its map and profile.

Section 5152 Burns 1901, §3902 R. S. 1881, provides: "Every such company, before proceeding to construct a part of its road into or through any county named in its articles of association, shall make a map and profile of the route intended to be adopted by such company, which shall be certified by a majority of the directors, and filed in the office of the clerk of such county, for the inspection and examination of all parties interested therein." It is our conclusion that the filing of the map and profile is not required to precede condemnation. Under a statute much similar in character to the Indiana statute, Mr. Justice Brewer, speaking for the Kansas supreme court, said: "The only question is, do these requirements antedate the condemnation proceedings? It is a question of construction and intention, and not one of power. When must the map and profile be filed? Section forty-eight answers the question: 'Before constructing any part of the road.' If filed before construction commences, the clear letter of the law is obeyed. The legislature has fixed the time, who can change it? It is a matter entirely within legislative control, and beyond judicial determination. When is the construction of a road commenced? The term has no technical meaning. What is its ordinary acceptation? It refers to the labor put forth to fit and adapt a certain selected route to the running of cars. Construction is building. Building a road—constructing a road. This certainly does not include buying the ground on which to build and to construct it. Buying a piece of ground is not a part of constructing a house. It may be an essential prerequisite, but it is not a part of it. Much work has to be done before the construction of the road commences. A company must be organized, stock subscribed, a survey made, route selected, and the right of way obtained, before the construction commences. * * * It may be said, that, except

as preliminary to the application for condemnation of the right of way, the filing of a map and profile would be of little value. Possibly this may be so. It was deemed entirely unnecessary for four years. If so, it would not justify us in giving to the section a meaning its language did not authorize." *Missouri River, etc., R. Co.* v. *Shepard* (1872), 9 Kan. 647. It is to be observed that in §5160 Burns 1901, §3907 R. S. 1881, the first provision made is for the right to enter the lands to make a survey (which, of course, contemplates an act to be done in advance of filing the map and profile), then follows the grant from the State of the right to appropriate, and it is next provided that the corporation "shall *forthwith* [our italics] deposit with the clerk of the circuit court, or other court of record of the county where the land lies, a description of the rights and interests intended to be appropriated; and such land, rights and interests shall belong to such company, to use for the purpose specified, by making or tendering payment as hereinafter provided." It is further to be observed that in the *ad quod damnum* statute, which also provides for the condemnation of real property by railroads, there is no restriction found which makes the filing of a map and profile a condition precedent to an application for the writ. See §917 Burns 1901, §905 R. S. 1881. It seems to have been assumed by this court in *Prather* v. *Jeffersonville, etc., R. Co.* (1875), 52 Ind. 16, 40, that the instrument of appropriation, rather than the map and profile, was to be looked to for a description of what was taken, for it was said: "It is well settled that a corporation in condemning and appropriating property for public use should, in some public and definite manner, describe the property, so that the respective rights of the owner and corporation should be clearly defined and definitely fixed, and this is also necessary to enable appraisers to assess the damages sustained by the owner of the land condemned."

374    SUPREME COURT OF INDIANA,

Southern Ind. R. Co. *v.* Indianapolis, etc., R. Co.—168 Ind. 360.

The above considerations lead us to the conclusion that the map and profile may be filed after the condemnation. We are, however, impressed with the view, since railroad corporations are authorized to acquire title by negotiation for right of way purposes, and since condemnation in such a case is wholly unnecessary, and as the map and profile may be filed at any time before the construction, that, as to its own lands, and possibly as to other lands, as against rival companies, the filing of the map and profile should be considered as such an appropriation of the property for public purposes as to prevent, in the absence of undue delay, an appropriation of it by another company. *Williamsport, etc., R. Co.* v. *Philadelphia, etc., R. Co.* (1891), 141 Pa. St. 407, 21 Atl. 645, 12 L. R. A. 220; *Sioux City, etc., R. Co.* v. *Chicago, etc., R. Co.* (1886), 27 Fed. 770; *Barre R. Co.* v. *Montpelier, etc., R. Co.* (1888), 61 Vt. 1, 17 Atl. 923, 4 L. R. A. 785, 15 Am. St. 877. And see, under a somewhat different statute, *Rochester, etc., R. Co.* v. *New York, etc., R. Co.* (1888), 110 N. Y. 128, 17 N. E. 680.

But the difficulty with appellant's position in this case is that the single line which the map filed by the Southern Indiana Railway Company shows gives no idea as to the width of the right of way which it has elected to appropriate for public purposes, or as to whether such line is the median line of its proposed right of way. Such a map is clearly insufficient. *New York, etc., R. Co.* v. *West Shore, etc., R. Co.* (1882), 11 Abb. New Cas. 386; *Housatonic R. Co.* v. *Lee, etc., R. Co.* (1875), 118 Mass. 391; 3 Elliott, Railroads, §926. It also appears that the mere fact that the lands were sufficiently described in the recorded deeds could make no difference.

No doubt these deeds were notice of a legal holding, but they did not constitute a legal location, for not only was the Southern Indiana Railway Company at liberty to use or sell the land for any purpose, but appellee was

entitled to know to what extent, within the width that might be acquired for right of way purposes, the purchasing company had elected to stamp upon the lands a public character. See *Indianapolis, etc., R. Co.* v. *Reynolds* (1888), 116 Ind. 356; *Ft. Wayne, etc., R. Co.* v. *Sherry* (1890), 126 Ind. 334, 10 L. R. A. 48. In the leading case of *Williamsport, etc., R. Co.* v. *Philadelphia, etc., R. Co., supra,* it was held that in the absence of a legal location on the part of the plaintiff railroad, it had no standing to enjoin the defendant railroad from proceeding regularly to appropriate a certain lot, for which the plaintiff had contracted, and which it intended to use as a terminal for its railroad, which was then in course of construction. And see, also, *Kanawha, etc., R. Co.* v. *Glen Jean, etc., R. Co.* (1898), 45 W. Va. 125, 30 S. E. 86. As the law stands in this State, we think there can be no question, in the absence of an actual occupancy for railroad purposes, or of steps taken under the statute which amount to a location of the right of way, that lands purchased by a railroad company on which to build its road are open to a location by means of a condemnation proceeding instituted by another company. *Indiana Power Co.* v. *St. Joseph, etc., Power Co.* (1902), 159 Ind. 42. And see 2 Lewis, Eminent Domain (2d ed.), §306.

It is further contended that the interlocutory order is not supported by the evidence, in that it does not show an effort to agree as to the compensation for the taking of the land described in appellee's amended complaint, there having been a slight change in the description of the real estate in the latter pleading. We doubt whether a mortgagee, with whom the statute does not require the condemner to negotiate, can be heard on appeal to present the question, but it appears to us that appellant's point is not raised by the assignment of errors. It not being a permissible practice to file a motion for a new trial in such a proceeding as this (*Morrison* v. *Indianapolis, etc., R. Co.* [1906], 166 Ind. 511), the only

376 SUPREME COURT OF INDIANA,

Southern Ind. R. Co. *v.* Indianapolis, etc., R. Co.—168 Ind. 360.

assignment remaining that is at all calculated to present the question, is that the interlocutory order appointing appraisers to assess damages is not sustained by sufficient evidence. In motions for new trials, general assignments that the verdict or finding is contrary to law or is not sustained by sufficient evidence have been permitted, because they follow the language of the code (*Collins* v. *Maghee* [1869], 32 Ind. 268), and it is further to be observed that such a motion is passed on by the judge who heard the evidence, but both the statute (§667 Burns 1901, §655 R. S. 1881) and a rule of this court (Rule 4) call for specific assignments of error. The section of the statute referred to was enacted long before the adoption of the present rules, which represent a distinct effort to secure greater certainty. Assignments of error constitute the complaint on appeal, and as was said in *Hollingsworth* v. *State, ex rel.* (1856), 8 Ind. 257, 258: "It is the assignment of errors which informs the appellee what he is called upon to answer." The assignments are not only in the nature of a pleading, but they are jurisdictional in their nature. Elliott, App. Proc., §§303, 458. In view of these considerations, we do not think that it can be said, with any degree of fairness, that an assignment which merely questions the sufficiency of the evidence is specific. There appears to be a considerable division in the courts concerning the degree of specificness required on a motion for a new trial, but on appeal, where the requirement is that the assignment must be specific, there seems to be but little dissent from the strong current of authority that the assignment must point out wherein the evidence is insufficient. Thus, it is stated in 2 Cyc. Law and Proc., 992, citing many authorities: "An assignment of error based on the insufficiency of evidence must point out the particulars in which the evidence is insufficient, or it will not be considered. A mere general assignment of error that the evidence is insufficient, or that the

judgment was not supported by the evidence, presents no question for review." See, also, 2 Ency. Pl. and Pr., 955; 3 Cent. Dig., title, Appeal and Error, §3021. While the sufficiency of pleadings and the like, which in their nature are largely calculated to present concrete questions, may be questioned by mere general assignments, yet as applied to the evidence on appeal, which often, as in this case, is set forth in a bill of exceptions of several hundred pages, we are of opinion that the assignment, designed, as it is, to apprise appellee of what he is called on to answer, must be more specific than the assignment which is here in question. We hold that under a challenge to the whole body of the evidence, it is not competent for appellant to bring forward each and every objection to its sufficiency that he may see fit to assert.

Objection is further urged to the provision of the order concerning the right of the Southern Indiana Railway Company to appropriate a part of the roadbed of appellee, when the former elects to build, upon paying to appellee the cost of it. This objection should have been raised by motion to modify. *Evans* v. *State* (1898), 150 Ind. 651, and cases cited. We may say, however, for the guidance of the trial court, since the order appealed from is interlocutory, that the terms which the court fixed before should not be imposed upon the Southern Indiana Railway Company, in the event of a future order appointing appraisers, and, since the proceedings as to the Equitable Trust Company are *in fieri,* we may further observe that it is still within the power of the court to relieve the latter company from such unauthorized terms, for the purpose of the assessment of damages on exceptions, if any, to the award.

The interlocutory order is affirmed as to the Equitable Trust Company, but it is reversed as to the Southern Indiana Railway Company, with an order to quash the return as to it, and for further proceedings not inconsistent with this opinion.